## BRAMLEY v. DILWORTH.

(Circuit Court of Appeals, Sixth Circuit. June 7, 1921.)

No. 3506.

1. **Trial ⊚⟼139 (1)—Evidence requiring submission of case to jury.**

    A court has no authority to direct a verdict, where on a consideration of all the evidence, and the inferences reasonably and justifiably to be drawn therefrom, a verdict for the opposing party would be sustained.

2. **Municipal corporations ⊚⟼705 (2)—Duty of driver of automobile to look effectively before entering crossing street.**

    It is the duty of the driver of an automobile, before turning into a crossing street, not only to look for cars approaching thereon, but to look in such an intelligent and careful manner as will enable him to see the things which a person, in the exercise of ordinary care and caution, for his own safety and the safety of others, would have seen under like circumstances.

3. **Municipal corporations ⊚⟼705 (2)—Construction of ordinance regulating vehicle traffic at crossings.**

    Provision of a city ordinance that vehicles on main thoroughfares going in a general east and west direction shall have the right of way, as applied to automobiles, means only that, when two cars are approaching a street intersection, one on the main thoroughfare and the other on a crossing street, the latter shall give way to the other; but if there is no car on the main thoroughfare when one approaches it on an intersecting street, sufficiently near to demand this right of way, such provision has no application. It does not authorize reckless or careless driving on the main thoroughfares, without regard to the safety of crossing cars, and the driver of a car on an intersecting street has a right to assume that cars on the main thoroughfare will be operated in a lawful manner, at lawful speed, and with due care.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Action at law by John G. Dilworth, by his next friend, John C. Dilworth, against Matthew F. Bramley. Judgment for plaintiff, and defendant brings error. Reversed.

W. H. Boyd, of Cleveland, Ohio (Boyd, Cannon, Brooks & Wickham and Howell, Roberts & Duncan, all of Cleveland, Ohio, on the brief), for plaintiff in error.

S. H. Holding, of Cleveland, Ohio (Holding, Masten, Duncan & Leckie, of Cleveland, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. On the 12th of November, 1919, the defendant in error, John G. Dilworth, a minor, resident of Pennsylvania, by his next friend, John C. Dilworth, commenced an action in the United States District Court Northern District of Ohio, Eastern Division, against the plaintiff in error, Matthew F. Bramley, to recover damages for personal injuries, which injuries he averred in his petition were caused by the negligence of Matthew F. Bramley. The acts of negligence complained of are fully set forth in the petition. Issues were joined by answer and reply, and the cause was tried to a

⊚⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

jury, resulting in a verdict for the plaintiff in the sum of $33,000. Judgment was rendered upon this verdict.

Dilworth, at the time of the accident, was visiting in Cleveland. On the evening of the 15th of April, 1919, with a number of other young men of his acquaintance, he attended a fraternity meeting at the Paisley house, on or near to Edgewater Drive, in the city of Cleveland, Ohio. Edgewater Drive runs east and west and is 28 feet wide from curb to curb. At a point near where the accident occurred there is a street called Harbor View Drive, 24 feet wide, running north from Edgewater Drive, then turning in the shape of a letter "U" and re-entering Edgewater Drive about 500 feet west of the place where the collision occurred. The Paisley house is about one-third of a mile west of the place where the collision occurred.

After the fraternity meeting was over, and about 10:30 p. m., Dilworth, with six other young men, was traveling eastward on Edgewater Drive in a Hudson automobile driven by Leland Ritzman. About the same time Bramley drove a Templar Sedan automobile out of Harbor View Drive at its east point of intersection with Edgewater Drive, crossed Edgewater Drive to the south side, and was proceeding east along that highway. The rear end of his automobile had reached a point about 16 feet east of a point in the south curb of Edgewater Drive directly opposite the east curb line of Harbor View Drive, when the car in which Dilworth was riding, and which was driven by Leland Ritzman, overtook it, and in attempting to pass to the right of it collided either with the spring horn of the frame or the right rear wheel with such force as to break all the glass on the right side and rear of the Bramley car, break the right rear wheel, and force the axle ahead on the right side eight inches, tearing off 4 U-bolts which held the axle to the spring, and also shearing off 8 of the 10 bolts which held the axle housing to the differential housing. It also broke the running board on the right rear side. The left rear wheel of the Hudson car, in which Dilworth was riding, was crushed or crumpled up and completely destroyed, and the rear fender was broken. The force of the collision caused Dilworth to be thrown to the top or the side of the Hudson car, by reason of which he sustained severe injuries.

The petition avers that Bramley was guilty of negligence in attempting to cross Edgewater Drive without giving notice or warning by horn or otherwise, and in driving in a careless manner and at a negligent rate of speed, and without looking to the west along Edgewater Drive to ascertain before turning into that drive whether an automobile was moving easterly thereon; that, on the contrary, he suddenly and quickly attempted to cross Edgewater Drive and proceed in an easterly direction along the same; that at that time Edgewater Drive was paved with asphalt and was wet and slippery; that the condition of the pavement was such that an automobile turning into the drive was liable to skid unless driven slowly and carefully, all of which Bramley then and there well knew. It is further averred in the petition that Bramley, in driving over and across Edgewater Drive, violated paragraphs 1, 6, 12, 13, and 14 of section 1341 and also section 1343a of the Ordinances of the City of Cleveland.

The answer denied these averments of negligence on the part of Bramley, denied that the plaintiff was injured as a direct and proximate result of any negligence or carelessness on the part of the defendant, and averred that defendant was driving properly with due regard to his own safety and the safety of others; that the plaintiff was injured solely as a result of the negligent, terrific, unlawful, and highly dangerous rate of speed at which the Hudson car, in which Dilworth was riding, was being driven by Ritzman, in total disregard of the safety of defendant and all others upon the highway and of the occupants of said car. The reply denied the allegations of the answer which did not admit the averments in the petition.

Section 1343a of the Ordinances of the City of Cleveland prohibits the driving of an automobile or other vehicle recklessly or negligently, or at a rate of speed or in a manner so as to endanger or to be likely to endanger the life or limb or property of any person, and further provides that a rate of speed exceeding 15 miles per hour shall constitute prima facie evidence of a violation of this ordinance, and that a rate of speed exceeding 20 miles per hour shall be conclusive as to its violation.

Paragraph 14 of section 1341 provides, among other things, that no vehicles shall cross any main thoroughfare or make any turn thereon at a greater speed than one-half of the legal speed limit upon such thoroughfare, and that in all other cases vehicles going in a general east and west direction shall have the right of way. The provisions of paragraphs 12 and 13 are substantially the same as to right of way.

The plaintiff in error seeks a reversal of this judgment upon the grounds:

(1) The evidence is insufficient to support the verdict and judgment.

(2) The court erred in its charge to the jury.

(3) Error of the court in permitting the witness Ritzman, the driver of the Hudson car, to testify that he had the right of way, and knew he had the right of way.

(4) The court erred in permitting the witness Scribner to testify that in his opinion the Bramley car skidded.

While under the facts of this case the negligence of the driver of the Hudson car cannot be imputed to the plaintiff in error, nevertheless the manner in which this car was operated, at and immediately prior to the time of the accident, is of vital importance in determining the real cause of this accident.

The witnesses for the defendant placed the speed at which the Hudson car was traveling eastward on Harbor View Drive at 40 or 45 miles an hour. The young men riding in that car testified that it was traveling about 20 or 25 miles an hour, but further stated that it was traveling so fast that because of the condition of the street the driver could not apply the brakes and stop the car within a reasonable distance. There are, however, some other facts in this case that perhaps demonstrate with greater certainty the speed at which this Hudson car was traveling than the opinion of witnesses who saw it or were riding in it. The driver of this car, realizing that there was not suffi-

cient room between the Bramley car and the curb to permit his car to pass, ran the right wheels of the Hudson car over the south curb. These wheels cut into the soft clay on the outside of the curb, cutting a gutter therein 10 to 14 inches wide and from 6 to 12 inches deep in places, and about 35 feet in length to where the car returned to the street. The car, while traveling in this course and under these conditions, came in contact with and completely tore out of the ground a cedar post which was standing just inside the curb, 8 feet long, 6 to 8 inches in diameter, and sunken in the ground from 2 to 2½ feet.

There is some conflict in the evidence as to the distance the Hudson car ran with a crushed left rear wheel and its two right wheels in the soft earth. The evidence offered by the plaintiff tends to prove that it stopped after it had passed the Bramley car a short distance; the defendant's evidence tends to prove that it did not stop until it had run the entire length shown by the ruts in which the wheels traveled until it passed back into the street. While the attending facts and circumstances would indicate that the Hudson car must have been carried by the velocity with which it was moving, in connection with its own power, the entire distance traveled by it until it re-entered the paved street, instead of being moved there by its own power only, after it had once stopped, yet whether that be so or not is of little importance. It affirmatively appears from the plaintiff's evidence that this car traveled a substantial distance with two wheels deeply imbedded in the soft earth and its left hind wheel crushed and useless. The force with which it struck the Bramley car has already been described.

The driver of the Hudson car testified he was traveling at about 20 miles an hour, yet under the provisions of section 1343a of the Ordinances of the City of Cleveland, a rate of speed exceeding fifteen miles an hour under any conditions is prima facie evidence, and a rate of speed exceeding 20 miles an hour conclusive evidence of the violation of the provisions of this ordinance, so that if the testimony of Ritzman as to the speed at which he was driving is accepted as true, in view of the wet, slippery, and dangerous condition of this street at this time, 20 miles an hour would certainly constitute a violation of the provisions of this ordinance.

Ritzman also testified that he had his car under control. By this he must have meant that he had it under control so far as guiding its direction was concerned, for he also says that at the rate he was traveling, and the wet and slippery condition of the street, that if he had used his brakes the car would have skidded against the Bramley car. Therefore he had not full control of the speed of his car at the time he first saw the Bramley car, and which he says was then about 45 feet away from him. On the contrary, the important safety appliances of brakes provided upon all cars for the purpose of checking and controlling the speed were wholly useless to him at the rate of speed that he was then traveling, and his testimony discloses that he fully knew that fact. The situation is not different, so far as he is concerned, than if he had voluntarily and with knowledge of the fact driven a car at this rate of speed at this street intersection that was not equipped

with either emergency brakes or any other brakes whatever. There is other evidence on the part of the plaintiff tending to prove that the Hudson car was traveling 20 to 25 miles an hour.

While all physical facts in this case tend strongly to corroborate the defendant's witnesses that the car was traveling at a much higher rate of speed than even 25 miles an hour, nevertheless this court has nothing to do with the weight of the evidence, and for the purpose of this review must accept the evidence most favorable to the plaintiff's contention; but that evidence, taken in connection with the admitted facts in the case, and construed in connection with the Ordinances of the City of Cleveland, clearly establish that the Hudson car, at and immediately prior to the time of the collision, was being operated at a negligent and highly dangerous rate of speed, in violation of the provisions of the ordinances of Cleveland, and this negligence in driving this car at an excessive and dangerous rate of speed is aggravated by the fact that at the rate of speed the car was moving, taken in connection with the wet, slippery, and dangerous condition of the surface of the street, the brakes were useless as a means to control that speed. However, the negligence of the driver of the Hudson car is not imputable to Dilworth. The evidence in relation to Ritzman's negligence is important only in enabling the jury to determine the real cause of the accident. Regardless of the negligent operation of the Hudson car, if Bramley was guilty of negligence in driving upon and across this street and his negligence contributed to the accident and the consequent injury to the plaintiff, the plaintiff is entitled to recover in this action.

From the defendant's evidence it appears that Bramley had driven his car south on Harbor View Road to its east intersection with Edgewater Drive and there came to at least a momentary stop; that he then started directly across Edgewater Drive to the south side, where he turned east. Bramley testified that when he started upon Edgewater Drive he looked to the west, but did not see the Hudson car; that when he got about the middle of the street he saw the lights of this car 500 or 600 feet to the west of him. The witnesses that were riding in the automobile that was following, and but a short distance behind, the Bramley car on Harbor View Drive, saw the lights of the Hudson car when they reached the north line of Edgewater Drive. These witnesses testified that the car was 300 or 400 feet to the west of this street intersection when they first saw it; that Bramley's car was then crossing Edgewater Drive; that the Hudson car was coming east at the rate of 40 or 45 miles an hour. Bramley further testified that he started his car in low gear, and is not certain whether he had thrown it into second gear or not before the collision occurred; that he was traveling not to exceed 5 miles an hour. It also appears from the evidence that the distance from the place where he stopped his car to the point of the collision did not exceed 44 feet, including the width of the street, 28 feet, and the 16 feet that he had driven eastward on Edgewater Drive, from which fact it is insisted that Bramley's car could not have attained any great rate of speed. In this respect he is corroborated by other witnesses, who testified that

his car was not going much faster than a fast walk, from 3 to 5 miles an hour. One witness for the plaintiff, however, who was riding in the Hudson car, and who saw the side of the Bramley car for a moment only through the small "clear space" in the windshield, testified that in his opinion it was traveling at the rate of 10 miles per hour. Practically all of the witnesses for the plaintiff testified that the Bramley car, when they first saw it crossing Edgewater Drive, was not to exceed 45 feet away from the Hudson car. Some of the witnesses estimate the distance at even much less than that.

[1] Upon this state of the proof the court did not err in overruling the motion of the defendant for a directed verdict. A court has no authority to direct a verdict, where upon a consideration of all the evidence, and the inferences reasonably and justifiably to be drawn therefrom, it appears that under the law such facts and inferences will sustain a verdict for the opposing party. Standard Life & Accident Ins. Co. v. Thornton, 100 Fed. 582, 40 C. C. A. 564, 49 L. R. A. 116. The reverse of this proposition is well stated in the case of Randall v. Baltimore & Ohio R. R. Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003, in this language:

"It is the settled law of this court that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant"

—citing in support of this proposition Pleasants v. Fant, 89 U. S. 116, 22 L. Ed. 780; Herbert v. Butler, 97 U. S. 319, 24 L. Ed. 958; Bowditch v. Boston, 101 U. S. 16, 25 L. Ed. 980; Griggs v. Houston, 104 U. S. 553, 26 L. Ed. 840.

[2] It is clear that if the defendant drove upon and across Edgewater Drive, without looking to the east or to the west for the purpose of determining whether a car approaching from either direction was so near that there would be danger of a collision, he would be guilty of actionable negligence. While it is true that Bramley testified that he did look to the west, and that he saw no car approaching when he first entered upon Edgewater Drive, nevertheless, if the Hudson car, equipped with two bright headlights was then so near this street intersection as the plaintiff's witnesses say it was, in the very nature of things he would have seen that car approaching. He was not only required to look, but he must look in such an intelligent and careful manner as will enable him to see the things which a person in the exercise of ordinary care and caution, for his own safety and the safety of others, would have seen under like circumstances. Railway Co. v. Elliott, 28 Ohio St. 340–352; Spencer v. Railroad, 29 Iowa, 55; Railroad Co. v. McKean, 40 Ill. 218.

The claim of the plaintiff in error that the physical facts in this case wholly disprove the evidence offered on behalf of the plaintiff as to the location of this Hudson car when Bramley drove upon Edgewater Drive is not tenable. These facts affect only the question of the weight of the evidence. While they are persuasive they are not conclusive upon that question. Undoubtedly they tend strongly to cor-

roborate the testimony offered on behalf of the defendant as to the location of the Hudson car at that time; nevertheless there is a direct and positive conflict in the oral evidence in this respect, and therefore the question was one for the jury.

[3] It is insisted upon the part of the plaintiff in error that the court erred in its charge to the jury in reference to the right of way. Upon this subject the court charged as follows:

"When you go into the question, to be enlightened by the evidence, whether the defendant was careless, you must take into consideration all the circumstances that attended that particular incident—the weather, the kind of car he was in, the fact that he was coming from a highway that had in some measure a subordinate relation, to the other—for, technically, the right of way was with the vehicle on the main drive."

After the charge the counsel for defendant excepted to this portion of it, and thereupon the court further charged the jury in the following language:

"Now, when the court spoke to you about the right of way being technically in the user of the main highway, it simply meant that this was one of the incidents of the situation which Mr. Bramley, coming from a subordinate highway, was to have in mind. By no means does that mean that the party using the main highway had a right to rely upon the road being absolutely clear; nor by no means does it mean that any extraordinary precaution on the part of Mr. Bramley should be observed in coming in there. It is merely one of the incidents of the situation."

Counsel for plaintiff in error insist that this modification of the charge is equally prejudicial and does not cure the error complained of. The charge is based on paragraphs 12, 13, and 14 of section 1341 of the Ordinances of the City of Cleveland, which paragraphs provide in substance that vehicles going on main thoroughfares running in a general east and west direction shall have the right of way over those going on intersecting main thoroughfares. The right of way within the meaning of these paragraphs of this ordinance is a relative right; that is to say, that the application of this ordinance depends entirely upon the facts of each particular case. The ordinance means that when two vehicles are approaching a street intersection, one on the main thoroughfare and the other on the intersecting street, that the one on the intersecting street must give way to the one on the main thoroughfare; but, if there is no car on the main thoroughfare sufficiently near to demand this right of way, then the ordinance has no application whatever, and has nothing to do with the case. In other words, a car driven on an intersecting street, seeing a car approaching at such a distance that it may turn in safety upon the main thoroughfare, is not compelled to stop and wait until the distant car has reached and passed the point of intersection; nor does this ordinance relieve the driver upon the main thoroughfare from the broad requirements of section 1343a, prohibiting the operation of an automobile or vehicle upon any public highway in the city of Cleveland recklessly or negligently, or at a rate of speed or in a manner so as to endanger or to be likely to endanger the life or limb or property of any person. The driver of a car on an intersecting street, when turning his car into a main thoroughfare, has the right to presume that the driver of an

approaching car on the main thoroughfare is operating his car at a lawful speed and with due care and that such car and all its safety appliances and equipments are fully under the control of the driver. If the Hudson car was in fact 300 feet distant from this street intersection at the time Bramley turned into it, his action would not be negligent, and the ordinance as to right of way would have no application whatever.

The court instructed the jury that the street from which Bramley drove his car onto Edgewater Drive "had in some measure a subordinate relation to the other—for, technically, the right of way was with the vehicle on the main drive." In its modification of this instruction the court stated that what he had said in reference to the vehicles on the main drive having technically the right of way "simply meant that this was one of the incidents of the situation which Mr. Bramley, coming from a subordinate highway, was to have in mind." Taking this charge in connection with the fact that Ritzman, the driver of the Hudson car, was permitted to testify over the objection of the defendant that "I knew I had the right of way, through my experience, knowing what is the right of way and what is not," the jury would naturally interpret the charge as meaning that Ritzman had the right of way, technically at least, under any and all circumstances, regardless of the distance his car may have been from the street intersection at the time Bramley turned upon Edgewater Drive.

The jury should have been instructed, in connection with the charge as given and the modification thereof, that if it found from the evidence offered on the part of the defendant that the Hudson car was so far west of this intersection when Bramley drove upon the main highway that there could be no probability of collision if the Hudson car was operated at a lawful rate of speed, in a lawful manner, in conformity to section 1343a of the Ordinances of the City of Cleveland, that then and in that event the Hudson car did not have the right of way technically or otherwise, and that under such a state of facts this provision in the ordinances of Cleveland in reference to right of way would have no application whatever. This charge fails to take into consideration the evidence offered on behalf of the defendant in reference to the distance the Hudson car was west of this street intersection when Bramley drove upon the main thoroughfare. It also fails to take into account that the provisions of the city ordinances in reference to right of way has no application where the car approaching upon the main highway is at such a distance from the street intersection that it cannot delay and obstruct traffic by demanding such right of way.

The charge as given, without this modification and explanation by the court as to the application or nonapplication of these ordinances to the facts as found by the jury, was undoubtedly prejudicial to the plaintiff in error. The conflict in the evidence in relation to the distance of the Hudson car from this street intersection when Bramley drove upon Edgewater Drive was so sharply drawn and so vital to a correct determination of the results in this case that it was essential that the jury should be fully advised of the scope and effect of this

ordinance and the state of facts under which its provisions would apply. The prejudicial effect of this charge is seriously aggravated by the evidence of Ritzman, under the sanction of the court, that he knew he had the right of way, for whether or not he had such right of way was not for him to decide. He might have believed that he had the right of way when he was a mile distant from this street intersection, yet under the terms of this ordinance he had the right of way at street intersections only where the situation was such that one of these cars must give way to the other and both could not use it with safety. Even then, under the terms and provisions of section 1343a of the city ordinances, he would be required, in asserting his right thereto, to exercise reasonable care so as not to endanger the life or limb or property of another.

Upon the question of whether the Bramley car skidded or the Ritzman car skidded, there is also a serious conflict in the evidence. The plaintiff in error insists that the trial court erred in permitting the witness Scribner to testify, on behalf of the defendant, that in his opinion the Bramley car skidded. The jury was fully informed by the evidence as to all the facts and circumstances in relation to this entire transaction. It does not appear from this evidence that Scribner was in any better situation to determine that question than the jury itself, and therefore his evidence in that respect should have been rejected. However, it does not appear that this error was prejudicial, but we refer to it only that it may be avoided upon a retrial of this case.

For the reasons above stated, this judgment is reversed, and the cause is remanded to the District Court, for further proceedings and a new trial in accordance with this opinion.