204 P.2d 264

**BROWN et al. v. COBB.**

No. 5164.

Supreme Court of New Mexico.

March 8, 1949.

Crampton & Robertson and Robert S. Skinner, all of Raton, for appellant.

H. M. Rodrick, of Raton, and H. A. Kiker, of Santa Fe, for appellees.

COMPTON, Justice.

Appellees, legatees under the last will and testament of Sadie Smyth, deceased, seek to cancel a written instrument by the terms of which the said Sadie Smyth leased certain ranch lands to appellant. From an adverse judgment appellant brings this appeal.

It is alleged in substance that Sadie Smyth was old, mentally weak, without sufficient mental capacity to transact business, and that appellant Cobb aided by

Dalton Ladd, her employee, exerted undue influence upon her and thereby induced her to make the lease in question, and for a grossly inadequate consideration. By answer, all material matters are put in issue.

The trial court made the following pertinent findings of fact:

"2. That Dalton Ladd was employed by Sadie Smyth for several years while she was actively engaged in the cattle business as aforesaid and gained her trust and confidence which lasted to the end of her life.

"5. That in January, 1947, the said diseases with which she was afflicted again made it necessary for her to be brought to Raton, for medical attention, her abdomen, legs, feet and arms having become greatly swollen, and so, after a short time, she was again taken to said hospital for treatment, where she remained for about one month and then returned to her sister's home in Raton to recuperate, where she remained until about March 27, 1947 when the said Dalton Ladd returned her to her ranch home where she remained until May 29, 1947 when her condition became such that an ambulance was sent from Raton to her ranch, which brought her to said hospital again where, on June 8, 1947, she died of the said cardio renal disease.

"6. During the early part of her confinement in said hospital in Raton, in *January, 1947,* Sadie Smyth was so enfeebled and disabled physically and mentally by said disease that she did not have the mental capacity to enable her to attend to any business matters of importance, and during said time of such incapacity, which lasted for several days, she could not have known or understood the nature or substance of any kind of contract affecting her business affairs.

"8. That on *May 8, 1947,* the physical condition of the said Sadie Smyth was practically identical with her physical condition in the month of January, 1947 when she was taken to said hospital in Raton; and by reason of her infirmities and diseased condition, her mental faculties were impaired as they were during the first days of her confinement in said hospital in the month of January, 1947.

"10. That the said Tom Cobb knew the said condition of Sadie Smyth at and before the time she signed the same, knew that Dalton Ladd had great influence over her, and that she trusted him, and took advantage of that knowledge to get her signature to said lease.

"11. That the said Dalton Ladd exercised an undue influence over Sadie Smyth and in so doing, aided Tom Cobb in procuring said lease for a grossly inadequate price.

"12. That the said Tom Cobb, aided by Dalton Ladd, deliberately and designedly so managed that the said Sadie Smyth should not have the benefit of disinterested

advice of her attorney or her relatives with respect to said lease transaction, or the terms, form or execution thereof, but, on the contrary, took advantage of her mental and physical weakness in persuading her to sign said lease, thereby securing for said Tom Cobb the lease for a grossly inadequate consideration." (Emphasis ours.)

■ Appellant requested the trial court to make separate findings of fact which were refused. These requests are themselves a challenge to sufficiency of the evidence to sustain the material findings made. Consequently, the facts thus found are the facts to be reviewed, and if supported by substantial evidence the findings must be sustained. In re White's Estate, 41 N.M. 631, 73 P.2d 316; Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900; Flippo v. Martin, 52 N.M. 402, 200 P.2d 366, recently decided.

■ The case turns on the sufficiency of the evidence to support the findings. The evidence must be considered in an aspect most favorable to appellees and all evidence to the contrary must be disregarded. Indeed, for our consideration, all evidence to the contrary is presumed to be untrue. Marchbanks v. McCullough, 47 N.M. 13, 132 P.2d 426, 429; Flippo v. Martin, supra.

■ In Marchbanks v. McCullough, supra, we define substantial evidence in the following language: "If reasonable men all agree, or if they may fairly differ, as to whether the evidence establishes such facts, then it is substantial."

Substantial evidence may also be defined as evidence of substance which establishes facts and from which reasonable inferences may be drawn. International Ry. Co. v. Boland, 169 Misc. 926, 8 N.Y.S.2d 643.

■ We make no attempt to define "undue influence". Neither is it susceptible of any fixed formula. Whether undue influence is present is always a question to be determined from the circumstances of the particular case, and any attempt to define it may well suggest a clear path of evasion. But, undue influence in the sense as used means influence, improperly exerted, which acts to the injury of the person swayed by it or to the injury of those persons whom she would have benefited. It is immaterial whether such influence is exercised directly or indirectly.

■ At 6 R.C.L. Sec. 53, "Undue Influence", we find the following: " * * * In order to render this rule applicable, it is not necessary that one of the parties should occupy such a dominant position towards the other as to justify the inference that the latter was without power to assert his will in opposition to the former. Nor is the rule confined to cases in which the relation between the parties is of a strictly fiduciary nature. It applies whenever a confidential relation exists as a fact, * * *. *The mental weakness of one of*

*the parties is an important element in raising a presumption of undue influence or in determining its existence.* It is undoubtedly the law that when, by physical or mental superiority, one obtains an advantage in a transaction over another who is enfeebled in mind and body, or by disease or old age, the person obtaining such advantage will be required to show that the transaction was a fair one." (Emphasis ours.)

 Black on "Rescission and Cancellation", Vol. 2, Sec. 247 says: "In determining whether undue influence has been exerted, it is important to take into consideration the age and physical condition of the person in question. * * * And it is well known that in most cases, though not invariably, this susceptibility is increased, and those powers of resistance are weakened, by the effects on the mind and will of advanced age, sickness and the prostration of the physical powers. * * * And if a gift or grant is made by a person thus enfeebled by age and infirmity to one shown to possess an influence over him, and especially if the transfer does not appear to be based upon any proper consideration or to be prompted by any adequate motive, a *very strong showing of undue influence will have been made.*" (Emphasis ours.)

 Sadie Smyth was admitted to the Miners Hospital in Raton June 13, 1945 and was discharged August 7, 1945; she was again admitted January 14, 1947 and discharged February 13, 1947; she was admitted a third time May 29, 1947 and died June 8, 1947.

Dr. Elliot, the attending physician, testified that when Mrs. Smyth was admitted January 14, 1947 she was very ill, suffering from cardio renal, commonly known as dropsy; that her body, hands, feet and legs were badly swollen and that she was suffering severe pain; that her mind did not function properly and that in his opinion she did not possess sufficient mental capacity to transact ordinary business matters. He also testified that if she was suffering physically on *May 9, 1947,* the day she signed the lease, as she was when he first saw her *January 14,* previously, that in his opinion she did not possess sufficient mental capacity to appreciate and understand the nature and effect of the lease agreement. He further testified that when she was admitted on May 29, some nineteen days after she had signed the lease agreement, he was shocked at her mental and physical condition. She was apathetic, noticed nothing; her mind was not functioning properly; almost a different person; that she was drowning in her own fluid, was water-logged; in the terminal stage of her last illness, was slowly dying; and that during the last ten days she was unconscious.

Immediately after Mrs. Smyth signed the lease, on May 9, 1947, Mrs. Dalton Ladd,

at the request of her husband, wrote a letter to Mrs. Emma Hague, a sister of the deceased, concerning her condition. The letter in part reads: "She is swelled just as bad as she was before * * * she has a terrible cough and spits up phlegm. I think she has had the flu * * * it is just all she can do to get from her bed to her chair in the kitchen. She doesn't sleep hardly any. Her legs are so heavy she can't hardly get them on the bed."

Mrs. Ladd admitted the correctness of the letter. She thus testified that Mrs. Smyth was swollen as badly on May 9, 1947 as she was in January previously, the time her attending physician states that in his opinion she did not have sufficient mental capacity to understand the effect of her agreement. Aside from her dropsical condition it is apparent that she was suffering from other serious physical disorders. She had a terrible cough and slept but little.

Mrs. Dove Brown, with whom Mrs. Smyth lived for awhile, testified that her mental condition steadily declined from the first attack in 1945. Mrs. Elizabeth Aird testified that she was mentally sick after entering the hospital in January 1947 and that she "lived in the past, as a child".

Appellant Cobb, when asked if at the time he talked to Mrs. Smyth concerning the lease, he formed an opinion as to her mental condition, answered, "I think so but I am not sure of it". Dalton Ladd, upon being interrogated concerning her mental condition while at the ranch from March 19, 1947 to May 29, 1947, responded, "Well, she knowed what she was doing the biggest end of the time". So we see her mental and physical condition at the time she made the contract.

Ladd was employed by Mrs. Smyth from May, 1929 to the latter part of 1941. He was re-employed in 1945. At that time the ranch was leased to Roe Seward. On November 1, 1945 it was leased to appellant for an annual rental of $2,500. The lease was renewed the second year for a like amount. All leases were oral and from year to year. It appears that she had always refused to lease for a long period. By the terms of the oral lease to appellant, presumably for the care of Mrs. Smyth, Ladd was furnished a home for himself and family and was permitted to run fifty head of his cattle upon the ranch without charge.

On May 8, 1947 appellant and Ladd went to the office of Mrs. Smyth's attorney in Raton and requested him to prepare a lease. Her attorney immediately questioned her mental capacity and refused their request, reminding Ladd that she had devised the premises to appellees and that a lease under the circumstances would encumber the property.

Appellant and Ladd then sought the services of an abstractor or realtor in

Raton and failing there went to Springer, arriving at night, where appellant engaged the services of an attorney who prepared the lease in question. The lease was drawn and acknowledged by appellant in Springer. Ladd then took it to the ranch for the signature of Mrs. Smyth. It was signed by her the following morning, May 9, 1947, and immediately thereafter it was delivered by Ladd to appellant. Appellant then took the lease to Maxwell, New Mexico and induced Ignacio Lopez, a notary public, in the absence of Mrs. Smyth and without her knowledge or consent, to certify that she personally appeared before him and acknowledged it.

Appellant and Ladd gained much. Appellant gained a five year lease at an annual rental of $2,000 instead of $2,500. Ladd gained, though not expressly provided for in the lease but admitted by him, a home for himself and family and free use of the ranch for fifty head of cattle for the full term of the lease.

Other facts are to be considered. In 1939 Mrs. Smyth made her last will and testament. She selected Ladd as an attesting witness. Subsequently, for some reason not appearing of record, she made a gift of $5,000 to him, or so he contends. The sum total of these facts, concurring to the injury of Mrs. Smyth, might well afford convincing proof that the lease was acquired by undue influence exerted by appellant and Ladd. Consequently, we cannot say that the evidence is not substantial. We are impressed, however, from a search of the entire record that there is evidence from which the trial court could have reached a different conclusion. Nevertheless, the function of determining the facts is a duty resting solely within the province of the trial court.

It is strongly asserted by appellant that it was Mrs. Smyth who was anxious to have the lease signed; primarily to prevent the premises falling into the hands of appellees, or others, immediately upon her death. A decisive answer to that assertion is the lease itself. If that be the purpose it wholly fails to safeguard her wishes. It contains no provisions against sub-leasing or a sale subject to the lease.

Appellant and Ladd testify at length that they did not exert any influence, due or undue, upon Mrs. Smyth to induce her to make the lease. Appellant asserts that this uncontradicted evidence was disregarded by the trial court. That the trial court cannot disregard the uncontradicted evidence material to the issue is a rule generally followed. Medler v. Henry, 44 N.M. 275, 101 P.2d 398. But if there are suspicious circumstances surrounding a transaction testified to, or if legitimate inferences drawn from facts and circumstances contradict or cast reasonable doubt upon the truth or accuracy of oral testimony, the rule has no application. Medler v. Henry,

supra. Obviously, the trial court concluded that the case fell within the exception.

The judgment will be affirmed, and it is so ordered.

BRICE, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.