227 P.2d 941

**ORTEGA et al. v. KOURY.**

No. 5289.

Supreme Court of New Mexico.

Feb. 14, 1951.

H. A. Kiker, Manuel A. Sanchez, Santa Fe, for appellant.

F. A. Catron, Sante Fe, for appellee.

LUJAN, Chief Justice.

The plaintiff brought this action to recover damages for the death of his son, a child about 3½ years of age, alleged to have been caused by the negligent operation of an automobile owned and driven by the defendant. The accident happened on May 15, 1948, between the hours of twelve noon and one o'clock, in the city of Santa Fe. The case was tried to the court without a jury. It resolved the issues in favor of the defendant and the plaintiff appeals.

The defendant (appellee) was driving northerly on Irvine Street in the City of Santa Fe. The day was bright and sunny. The street was hard surfaced and 21 feet wide between the east and west lines. There were no other cars or other obstructions upon the street interfering with the defendant's view or his operation of the car. The defendant had a clear view for approximately 600 feet ahead of him. He says that he was traveling between 10 and 15 miles an hour. A pool of blood and broken glass from the defendant's right front head lamp of his car were found ten feet from the east street line, a half foot from the middle of the street.

Camilo Vigil, a witness for the defendant, testified that he was sitting on the front seat of the car driven by the defendant and that just prior to the accident he saw a little boy coming out of a store which was located on the west side of the street. He further testified, as follows:

\* \* \* \* \* \*

"Q. How did you know that anything had been hit, that a child had been hit? A. I thought that the car had struck the child because I saw him running out of the store.

"Q. I don't understand what you mean, will you explain that? A. At the time we was coming in the car, and just before arriving to the store there was a little boy coming out of the store, and I don't know whether he went across the street or not, but anyway when we went right about in line with the store then is when I felt the bump.

\* \* \* \* \* \*

"Q. Now, when did you first know that a child had been struck? A. When we came in line with the store.

\* \* \* \* \* \*

"Q. Did you see any other children besides this one that you talked about coming out of the store? A. No, sir, just the one."

On cross-examination he testified:

"Q. Are you sure that he is not the child who came out of the store? A. I'm not sure because I didn't see him right.

\* \* \* \* \* \*

"Q. The thing that made you tell Mr. Koury that you thought you had struck a child was the bump? A. When I felt the bump and when I saw the little boy run out of the store, and I thought the child had run towards the street."

The defendant testified that he did not see the child that was killed nor any other child on the street at or prior to the fatal accident. This testimony is so inherently improbable as to be unworthy of belief.

So far as the record discloses, the only blood and broken glass found at the scene of the accident were ten feet from the east line of the street, thus showing conclusively that the point of impact was approximately one foot from the middle of the street. The defendant's explanation as to the broken glass from the front right head lamp of his car found (½) foot from the middle of the street is, that, it could have flown there. He testified: "Well, you take here now, when you hit a person, maybe the momentum of the car dragged him to there, or maybe the shatter of the glass could fly 10 feet, or when you hit a body or anything you hit, it isn't going to fall right where you hit it, it could have really gone farther back."

It is undisputed that the accident happened by the striking of the child with the right front head lamp of defendant's car. However, there is a dispute as to the point of impact. The defendant claims that the child was from 3 to 5 feet from the east side line of the street. The city policeman who investigated the accident testified that he found a pool of blood and broken glass from the defendant's right head lamp ten feet from the east line.

▪ Physical facts and conditions may point so unerringly to the truth as to leave no room for a contrary conclusion based on reason or common sense, and under such circumstances the physical facts are not affected by sworn testimony which in mere words conflicts with them. When the surrounding facts and circumstances make the story of a witness incredible, or when the testimony is inherently improbable, such evidence is not substantial. In State v. Armijo, 35 N.M. 533, 2 P.2d 1075, 1080, we said: " * * * But when the evidence itself is incredible, and in parts plainly fabricated, and, as a whole, convinces the mind that the truth is still suppressed, the point is reached, as it seems to us, where an appellate court should intervene. The verdict rests upon evidence which fails to meet any test of truth. We consider it unsubstantial."

▪ Plaintiff's Exhibit No. 1 is a photograph of the street. Indeed the picture demonstrates that there were no obstructions which could have prevented the defendant from seeing the child at a distance of more than 600 feet, had he been keeping a proper lookout for objects on the street.

It was his duty to keep a lookout and actually see what was in the street that he was using, and a failure so to do constitutes negligence on his part. Ryczko v. Klenotich, 204 App.Div. 693, 198 N.Y.S. 473. In 60 C.J.S., Motor Vehicles, sub-section (c) of § 284, p. 667, the author states the rule as follows: "Cognizance of What Is Looked at and May Be Seen.

"In order to keep a proper lookout, a motorist must do more than merely look; it is his duty to see and be cognizant of what is in plain view or obviously apparent, and he is chargeable with seeing what he should have seen, but not with what he could not have seen in the exercise of ordinary care.

"Merely looking is not sufficient performance of the motorist's duty to keep a proper lookout. It is his duty, unless some reasonable excuse or explanation for not seeing is shown, to see what is in plain view or obviously apparent, or the things which a person in the exercise of due care and caution would see under like or similar circumstances, and to be cognizant of them and utilize the information obtained to prevent injury to himself and others. He is not absolved from liability by a failure to see what he could have seen by the exercise of due diligence, but is chargeable with seeing what he should have seen, or that which is apparent or in plain view, or which he could have seen had he looked, or with

knowledge of all that a prudent and vigilant operator would have seen."

In Gregware v. Poliquin, 135 Me. 139, 190 A. 811, 813, the court said: "This court has repeatedly called attention to the settled and salutory rule that an automobile driver is bound to use his eyes and to see seasonably that which is open and apparent and govern himself suitably. Whenever it is the duty of a person to look for danger, mere looking will not suffice. One is bound to see what is obviously apparent. If the failure of a motor vehicle operator to see that which by the exercise of reasonable care he should have seen is the proximate cause of an injury to another, he is liable in damages for his negligence."

And in Bramley v. Dilworth, 6 Cir., 274 F. 267, 272, the court said: "He (the defendant) was not only required to look, but he must look in such an intelligent and careful manner as will enable him to see the things which a person in the exercise of ordinary care and caution, for his own safety and the safety of others, would have seen under like circumstances."

Our laws require that all persons who drive automobiles on public highways within the State must do so in a careful manner. Section 68-501, 1941 Comp., provides in part as follows: "(a) The driver or operator of any vehicle in or upon public highways within this state shall drive or operate such vehicle in a careful manner, with

due regard for safety and convenience of pedestrians * * *."

In Johnson v. Herring, 89 Mont. 420, 300 P. 535, (a case similar to the one at bar) an action to recover for the death of a six-year old child as the result of being struck by the defendant's truck while it was being driven on a bright, clear day through an alley 20 feet wide, which was straight, level, and free from any obstruction to view or passage, and it appeared that the plaintiff's intestate was from 25 to 30 feet in front of the truck at the time when another boy jumped out of its way, and that the decedent had started across the alley towards his home and had reached the middle thereof when he was overtaken by the truck, knocked down, and run over, although the driver of the truck testified that he did not see the boy until he stopped the truck near the end of the alley because he felt a "bump", and, looking back, saw the boy lying on the ground, the court held, reversing a judgment of nonsuit, that the plaintiff had made out a prima facie case which, in the absence of any explanation of the accident and the circumstances surrounding it, would sustain a verdict in his favor. 92 A.L.R. note on p. 1110.

■ Upon the evidence presented by the defendant himself, we can only reach the conclusion that, if the defendant did not try to pass around the child when it was in the middle of the street, (where the broken glass and blood were found), without stopping his car, taking a chance of not striking it, then he must have failed to exercise that reasonable care of observing what was ahead of him in the street which would have caused him to discover the child's peril in time to avoid the accident. In either case, because of his unobstructed view and unobstructed opportunity to freely drive his car upon any portion of the street, he was negligent. The findings made by the court on the issue of negligence are not supported by substantial evidence.

■ In reaching the conclusion as we do that the findings of the trial court are not supported by substantial evidence, we are not unmindful of the rule frequently announced by this court to the effect, "that it will not disturb the trial court's findings where they are based upon substantial evidence to sustain such findings." Such rule is in part founded upon the fact that the trial court has the opportunity to see the witnesses and to observe their demeanor while testifying and therefore is in a better position to determine the weight that would be given to the evidence than are members of this court who do not have that opportunity. The rule, however, does not relieve this court of its duty to examine the evidence and see whether or not it is substantial.

In Thuringer v. Trafton, 58 Colo. 250, 144 P. 866, 868, the court said: "The finding of a trial court is not necessarily bind-

ing on a court of review when it clearly appears from the whole record that such finding is wrong. The power of a court of review ought not to be left paralyzed so as to prevent a miscarriage of justice, merely by the erroneous findings of a trial court or the verdict of a jury."

That language is applicable here. The judgment will be reversed and the case remanded to the district court with a direction that it set aside its judgment, assess the plaintiff's damages and enter judgment in his favor for the amount thereof. It is so ordered.

COMPTON and COORS, JJ., concur.

McGHEE, Justice (dissenting).

The majority opinion picks out and relies on the evidence most favorable to a reversal of the judgment instead of following the heretofore universal rule that we must view the evidence in all its aspects most favorable to the judgment. The cases of Brown v. Cobb, 53 N.M. 169, 204 P.2d 264, and Griego v. Conwell, 54 N.M. 287, 222 P.2d 606, are two of the most recent on the subject. A hasty check shows we have announced the same rule in at least 32 other cases. This case is the first to follow a contrary rule.

I believe the majority opinion should have stated the photograph of the street shows a vine on the yard fence immediate-ly opposite the point where the child was struck, and also that there is a large telephone pole in the middle of the sidewalk which immediately adjoins the street; and further that the car was stopped in 20 feet after the child was struck.

Had the majority followed the heretofore settled rule above mentioned, the following would have been the facts on which the case would be decided.

That the defendant was driving along the street on a clear day at a speed of between ten and fifteen miles per hour, with his car under proper control; that he stopped it 20 feet from the point of impact; that he was driving along the right hand side of the street, watching the street ahead of him; that he did not see the child at any time before the car struck it on the left side of the head at a point between three and five feet from the right hand side of the street; that the child was last seen about fifteen minutes before the accident playing in the yard of his home, and no one saw him enter the street, and neither did any one see him in it until after he was struck; that he was struck approximately opposite the northerly portion of the garden of his home; that along the front of the garden and adjacent to the walk along the street there is a fence with a vine on it, and there are two trees just inside the fence; at the northerly end outside the fence and adjacent to the street there is a

large telephone pole; and that none of the four passengers riding in defendant's car saw the child at any time before the ac-cident. It should be added that a photo-graph of the street, vine, trees and pole shows there was little, if any, foliage on vine or trees when the accident occurred on May 15, 1948. The defendant is bound by the finding of the court that he knew pedestrians, including children, might be in the street at or near the location where the accident occurred, that the street was clear of all traffic except his car, and that he had a clear view of the street for 600 feet before the point of the accident.

No one saw the child in the street be-fore it was hit, and how or when it got there is entirely a matter of speculation, conjecture and surmise, and the finding based on all or either is not supported by substantial evidence. Citizens Finance Co. v. Cole, 47 N.M. 73, 134 P.2d 550.

It was held in Cerrillos Coal R. Co. v. Deserant, 9 N.M. 49, 49 P. 807, where it was purely speculative as to which of two ways an explosion causing injuries originated, the verdict should be for the defendant if, by either or both, the de-fendant was exempt from liability. This case has never been modified or overruled until today.

The case of Medina v. New Mexico Consolidated Min. Co., 51 N.M. 493, 188 P.2d 343, was one in which the body of a shift boss with his head blown off was found in a part of the mine where work was not being done that day. Suit was filed by his widow to recover under the Workmen's Compensation Act, 1941 Comp. § 57–901 et seq., and the trial court direct-ed a verdict in favor of the defendant, for the reason it had not been shown the ex-plosion arose out of and in the course of employment of deceased. It was here urged that it was a case of suicide and the defendant was, therefore, not liable. We held in the absence of any proof on the subject, the presumption against one com-mitting suicide and the fact that he was killed on the employer's premises were suf-ficient to take the case to the jury, but we did not hold the defendant liable as a mat-ter of law.

I do not believe any appellate court has held until today the mere fact an automo-bile collides with a pedestrian in a street raises a presumption of negligence. In fact, the rule is stated to be just the con-trary. See Annotations in 5 A.L.R. 1240, 64 A.L.R. 258 and 93 A.L.R. 1110.

In my research in this case I have kept in mind that no one saw the child in the street before it was struck, that it is unknown how long it had been there, when it entered, or from what place it came. The only re-ported cases I have been able to find where comparable facts were present are the fol-lowing: Gavin v. Bell Telephone Co., 87

Pa.Super. 276; Whalen v. Mutrie, 247 Mass. 316, 142 N.E. 45; Oland v. Kohler, 111 Pa.Super. 185, 169 A. 411; Purdy v. Hazeltine, 321 Pa. 459, 184 A. 660; Stauffer, Adm'r v. Railway Express Agency, 355 Pa. 24, 47 A.2d 817; Wiser v. Parkway Baking Co., 289 Pa. 565, 137 A. 797; McAvoy v. Kromer, 277 Pa. 196, 120 A. 762; Flanigan v. McLean, 267 Pa. 553, 110 A. 370.

In some of these cases nonsuit was entered against the plaintiff, in others judgments were entered notwithstanding the return of verdicts for the plaintiff, while in the others, judgments on findings or verdicts in favor of the plaintiff were reversed and judgments entered for the defendants. The plaintiff was not allowed recovery by the appellate courts in a single instance and they hold the doctrine of res ipsa loquitur may not be invoked in such cases. My extensive study of this case convinces me that not a single reported case can be found where a judgment in favor of the plaintiff was allowed to stand where the pedestrian who was struck was not seen in the street by anyone before the accident. A number of the cases were brought to recover for injuries inflicted on small children.

In the Montana case, Johnson v. Herring, cited in the majority opinion, the child was seen in the alley 20 or 25 feet ahead of the truck immediately before it was struck by the truck. The trial court had directed a verdict for the defendant but its judgment was reversed with instructions to submit the case to a jury, not with instructions to assess damages as is done here.

In Ryczko v. Klenotich, 204 App.Div. 693, 198 N.Y.S. 473, a verdict had been directed for the defendant. There was testimony that the child was seen in the street ten or twelve feet in front of the car before it was struck, and the appellate division held the issue of whether the defendant was negligent in hitting the child should have been submitted to the jury for its determination.

The case of Bramley v. Dilworth, 6 Cir., 274 F. 267, which is also cited in the majority opinion is one where the defendant overtook and sideswiped the plaintiff's car in an attempt to pass it. No one can dispute the statement lifted from the opinion that it is the duty of the driver of a car to keep a lookout for others using the street.

Gregware v. Poliquin, 135 Me. 139, 190 A. 811, is a case involving the collision of two automobiles in a street intersection and passengers riding in one of the cars sued the driver of the other car for injuries received in the collision. The court said the drivers of both cars were negligent, but that the negligence of the driver of the car in which the plaintiffs were riding could not be imputed to them. No one can quarrel with the statement the majority quote from this opinion, but it is hardly in point in the case under consideration.

By considering only the evidence most favorable to the plaintiff, and then injecting the doctrine of last clear chance, adding a dash of the doctrine of res ipsa loquitur, indulging in surmise, conjecture and speculation, the majority determine the defendant was guilty of negligence as a matter of law, reverse a contrary finding and judgment, and direct the trial court to assess the damages. As all of the cases I find on the subject hold the contrary, I dissent.

SADLER, J., concurs.