304 P.2d 575

V. T. RASCOE, Plaintiff and Appellee,

v.

TOWN OF FARMINGTON, Defendant and Appellant.

No. 6123.

Supreme Court of New Mexico.

Dec. 6, 1956.

52

Brown & Wood, Farmington, for appellant.

Palmer & Palmer, Farmington, for appellee.

SADLER, Justice.

The defendant as an appellant before us seeks a review and reversal of a judgment of the district court of San Juan County awarding damages against it as a municipality for negligently depriving him of water for the irrigation of certain crops on his land during the growing season of 1954.

The plaintiff at all times material hereto was the owner of a tract of land in the Town of Farmington on which he had an orchard, a small tract of alfalfa and a garden. It was irrigated by water received through a lateral from the Independent Irrigation Ditch. The plaintiff charged in his complaint that on or about February 1, 1954, the defendant through authorized agents took possession of plaintiff's headgate, lateral ditch and water, maintaining such possession throughout the cropping season of 1954, and until on or about March 1, 1955. It was claimed the plaintiff suffered damages from loss of fruit and hay crop in the amount of $8,500, plus permanent damage to the fruit and alfalfa in the sum of $2,500, or a total damage in the sum of $11,000 for which judgment was prayed.

The answer interposed a general denial and with the issues thus formed, the cause was submitted to a jury which returned a verdict in plaintiff's favor for damages in the sum of $2,200. Notwithstanding the general denial, at a pre-trial conference,

the defendant admitted ownership by plaintiff of the land on which the crops mentioned were located. Furthermore, and in addition to the general verdict in plaintiff's favor for the amount mentioned, the jury answered special interrogatories, as follows:

"Did the Town of Farmington wilfully and unlawfully deprive the plaintiff of the use of almost all the water he was entitled to in the 1954 crop season?

Answer 'Yes' or 'No': Yes

"We, the Jury, find the issues in favor of the plaintiff and against the defendant as to the permanent damage to the fruit trees and alfalfa, and assess damages in the sum of

$ none .

(Fill in the amount of damages in the blank space. If 'none', so indicate)."

Judgment was entered in plaintiff's favor for the amount mentioned above, to review and correct which this appeal is prosecuted.

It appears from the testimony that the water entered plaintiff's property through a lateral from what is known as the Independent Ditch at a point approximately 20 feet west of the northeast corner of the property. From this point, the plaintiff's main lateral ran south parallel with his east property line and approximately 20 feet therefrom to a garden located in the southerly portion of his property. This lateral was the only one which received any water for the year 1954.

A row of pear trees was located between this lateral and plaintiff's east property line. It received water from the plaintiff's north and south lateral and from the community lateral running parallel and just east of plaintiff's east property line. The pear trees received sufficient water for 1954, produced a crop and are not the subject of damages in this suit.

At the trial, the ownership by plaintiff of N½ of NW¼ of NW¼ of Section 10, Township 29 North, Range 13 West, N.M.P.M. was admitted, less the east 30 feet thereof, being a part of Butler Street. The tract mentioned was in the form of a rectangle, 660 feet from north to south by 1290 feet from east to west. The east 20 feet of the tract were taken up by the row of pear trees and the plaintiff's main lateral which supplied his garden. Such being the case, it became obvious that the 8 acres of apple orchard and the 4 acres of alfalfa hay, both were located to the west of this main lateral from which, as shown above, the plaintiff was able to get only enough water to supply his garden.

The Independent Ditch crosses Butler Street some 300 feet or more north of plaintiff's property. In early 1954, two laterals which took water out of the Independent Ditch existed on the west side of

Butler Street. The westerly of these two laterals was the plaintiff's lateral and the easterly one was known as the "Community Ditch," or "City Ditch." As already stated, the plaintiff's lateral took water from the Independent Ditch to the northeastern corner of plaintiff's tract and continued on south to supply other lands.

In 1954, these two laterals were filled up. While, as defendant admits, the testimony is confusing as to who filled up these laterals, the evidence sustains the jury's finding that it was done by, or under the authority of defendant. After the filling up of the two old laterals, a new lateral was dug by the defendant and rocklined. A division box was placed in it and a pipe installed leading to plaintiff's property.

The testimony is in conflict as to whether the new lateral was of sufficient size to carry the water previously carried by the two laterals that had been filled and as to the difficulty, or trouble, in getting water from the division box; also as to whether the plaintiff suffered a water shortage in 1954; whether he actually had an apple crop in that year and whether he complained to the Town about his water shortage; and, finally, as to the monetary value of his lost apple crop. All such conflicts, however, were resolved by the jury's verdict in plaintiff's favor.

Much is made in argument by defendant of the so called "physical fact rule," said to have been applied by this Court in the case of Ortega v. Koury, 55 N.M. 142, 227 P.2d 941. As applied to this case, it is contended the water entered his property at the northeast corner in ditches running west and south through his property and that, if he got water for his garden at the southern end of his property, the trees in the northeast corner would be the first to receive water. This, of course, was a matter for argument before the jury. The testimony was such, however, that the jurors may very well have found water could have reached the garden and yet have failed to supply the orchard with enough to reap a harvest from the orchard.

The testimony disclosed, without objection, that the use of the consolidated ditch was discontinued after the experience of 1954 and that plaintiff's lateral was restored to him for 1955. Thereupon, he was able to get his water, as he did prior to interference on the part of the Town.

We believe the record affords evidence sufficient to support a finding that the act of filling up plaintiff's lateral for the 1954 cropping season, and of failing to supply him another sufficient to supply his irrigation needs, resulted from acts of defendant. If so, it became liable to him for the damages actually suffered. The amount awarded by the jury does not exceed a figure well within the proof. If the Town was guilty of neglience in filling up plaintiff's lateral, as the jury found, it would be liable to plaintiff in a tort action,

even though its officers or agents were not by virtue of 1953 Comp. § 14–17–11, if done by its authority. Baca v. City of Albuquerque, 19 N.M. 472, 145 P. 110; Brown v. Village of Deming, 56 N.M. 302, 243 P.2d 609.

While the defendant charges in its complaint (and some of the instructions employ the same language) that the defendant acted *"wilfully,* unlawfully, wrongfully and forcibly" (emphasis ours) in interfering with the plaintiff's lateral, it was not claimed the defendant was liable for exemplary damages. Indeed, the instructions did not authorize the award of any such damages, nor does the verdict reflect the presence of any item on that account. Exemplary damages ordinarily are not allowable against a municipality in the absence of a statute so authorizing and we have none. Brown v. Village of Deming, supra. Hence, the word "wilfully" was not employed in the complaint and instructions as a basis for the award of punitive damages. "Willfully" is not necessarily employed as a synonym of "unlawfully" or "maliciously" or "fraudulently," since, ordinarily, it does not embrace an evil intent. 45 Words and Phrases p. 205.

It follows from what has been said that the judgment of the trial court is free from error and should be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ., concur.