427 P.2d 238

**John E. NANCE, Individually and as Next Friend and Father of Murrel Jean Nance, a minor, Plaintiff-Appellee,**

**v.**

**George J. JANSER, Defendant-Appellant.**

**No. 8162.**

Supreme Court of New Mexico.

April 3, 1967.

Rehearing Denied May 17, 1967.

Iden & Johnson, Eric D. Lanphere, Albuquerque, for appellant.

Charles E. Barnhart, Albuquerque, for appellee.

## OPINION

COMPTON, Justice.

This appeal stems from an intersectional collision of automobiles at Phoenix and Vermont Streets in Albuquerque and from a judgment awarding damages to the plaintiff, the defendant appeals.

On the morning of February 16, 1965, Mr. and Mrs. Rahles, Mrs. Rahles being then Miss Cohen, picked up the appellee en route to Sandia High School where appellee and Mrs. Rahles were students. Appellee was sitting in the back seat on the right side. The Rahles car approached the intersection with Vermont, a north-south street, traveling west on Phoenix Street. At the intersection a "Yield" sign faces westbound traffic on Phoenix. The sign was plainly visible from about a block away and there were no obstructions to the driver seeing it.

When the Rahles car had reached a point in the northwestern quadrant of the intersection, it was struck broadside by the appellant's southbound car driven by his daughter, Kathleen Janser. She and a friend, Margie Carroll, were en route to school at the University of New Mexico. Neither car left skid marks. Miss Janser had crossed the intersection many times and knew that traffic on Phoenix was controlled by a yield sign.

The court found that the Rahles car had entered the intersection first, and that the failure of Kathleen Janser to keep a proper lookout as she approached the intersection contributed as a proximate cause of the accident. Appellant challenges the sufficiency of the evidence to support the findings. There is no dispute in the evidence. The legal speed in the area was 25 miles per hour and the Janser car was traveling south at 25 miles per hour on Vermont prior to the collision. The Rahles car approached Vermont traveling "not very fast." No contention is made that he was exceeding the speed limit. Rahles had slowed down one block east of the intersection for a yield sign and had stopped two blocks farther east for a stop sign and, as he approached Vermont, he again slowed down at the yield sign, after which he proceeded into the intersection.

Both Miss Janser and Miss Carroll were called as witnesses by the appellee. Miss Janser testified that she did not see the Rahles car prior to the impact. Miss Carroll also testified that she and Miss Janser had been casually talking about the forthcoming examination for that morning and that she likewise did not see the Rahles car prior to the collision.

Mr. Rahles was in the military service at the time of trial and did not testify. Mrs. Rahles testified that as they approached Vermont she saw her husband look at the yield sign and felt the car slow down; that both she and her husband looked to the right and to the left on Vermont and

that they saw no vehicle approaching, whereupon they proceeded into the intersection. She testified further that she did not see the appellant's car in the intersection until "right before it hit," an instant before the collision. Appellee testified that she saw the appellant's car approaching possibly one or two seconds before the impact.

In Ortega v. Koury, 55 N.M. 142, 227 P.2d 941, cited in Beyer v. Montoya, 75 N.M. 228, 402 P.2d 960, we said:

"* * * It was his duty to keep a lookout and actually see what was in the street that he was using, and a failure so to do constitutes negligence on his part. * * *

" 'In order to keep a proper lookout, a motorist must do more than merely look; it is his duty to see and be cognizant of what is in plain view or obviously apparent, and he is chargeable with seeing what he should have seen, but not with what he could not have seen in the exercise of ordinary care.

" 'Merely looking is not sufficient performance of the motorist's duty to keep a proper lookout. It is his duty, unless some reasonable excuse or explanation for not seeing is shown, to see what is in plain view or obviously apparent, or the things which a person in the exercise of due care and caution would see under like or similar circumstances, and to be cognizant of them and utilize the information obtained to prevent injury to himself and others. He is not absolved from liability by a failure to see what he could have seen by the exercise of due diligence, but is chargeable with seeing what he should have seen, or that which is apparent or in plain view, or which he could have seen had he looked, or with knowledge of all that a prudent and vigilant operator would have seen.' "

■ We think the quality and quantum of evidence to establish the appellant's negligence in this case is adequate. See Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214. Also compare Langenegger v. McNally, 50 N.M. 96, 171 P.2d 316; Williams v. Haas, 52 N.M. 9, 189 P.2d 632; Schoen v. Schroeder, 53 N.M. 1, 200 P.2d 1021; Boydston v. Twaddell, 57 N.M. 22, 253 P.2d 312; and Sellman v. Haddock, 66 N.M. 206, 345 P.2d 416. See, also, annotation in 136 A.L.R. 1497. The proof would establish the following facts. Rahles did slow down; there is no evidence to the contrary. At the time no vehicle was on the intersection. After looking to the right and to the left, if he saw no vehicle approaching so closely as to constitute an immediate hazard, he had the right to proceed. The driver of the southbound vehicle did not see Rahles' car before the collision. She should not have proceeded into the intersection. Ortega v. Koury, supra.

We are committed to the rule that the evidence on review must be considered in an aspect most favorable to the judgment. Beyer v. Montoya, supra, and when we do so we find it substantial.

The judgment·should be affirmed. It is so ordered.

MOISE, J., and SPIESS, J., Court of Appeals, concur.