430 P.2d 763

STATE of New Mexico ex rel. LOS LUNAS
HOSPITAL AND TRAINING SCHOOL,
Plaintiff-Appellant,

v.

Ted MONTGOMERY, Defendant-Appellee.

No. 8236.

Supreme Court of New Mexico.

July 31, 1967.

Boston E. Witt, Atty. Gen., James V. Noble, Roy G. Hill, Asst. Attys. Gen., Santa Fe, for appellant.

, Civerolo, Cushing &. Hansen, Albuquerque, for appellee.

OPINION·

WOOD, Judge, Court of Appeals.

· The appeal involves an intersection accident. Plaintiff's driver, going north, stopped for a stop sign, and then had proceeded some twenty feet into the intersection when he was hit by defendant's car. Defendant, traveling east on a through street, was some sixty feet into the intersection when the collision occurred in its southeast quadrant. .

Plaintiff sued defendant for its property damage. It appeals from an adverse judgment, contending the trial court erred in failing to find that defendant was solely responsible for the accident. The issue is whether there is evidence to support certain findings of the trial court.

The trial court found that defendant's speed was thirty-five miles per hour and within the posted speed limit as he approached the intersection. Relying on Ortega v. Koury, 55 N.M. 142, 227 P.2d 941 (1951), plaintiff contends that the physical facts overcame this testimony.

It is only where the facts testified to are utterly at variance with well-established physical laws and, therefore, inherently impossible, or incredible of belief, that they will be rejected. International Service Ins. Co. v. Ortiz, 75 N.M. 404, 405 P.2d 408 (1965). Defendant testified that he was driving thirty-five miles per hour. An unchallenged finding is that there were no skidmarks or any physical facts or other evidence to indicate any excessive speed of defendant's automobile. Defendant's testimony and the unchallenged finding are not at utter variance with the physical facts on which plaintiff relies. Those physical facts are: both vehicles were severely damaged and plaintiff's heavy duty pickup was overturned. The situation here is one of conflicting evidence which presented a question for the trier of facts. International Service Ins. Co. v. Ortiz, supra. The trial court did not err in its finding as to speed.

The trial court found that plaintiff's driver proceeded into the path· of defend-

ant's car without exercising due care. It found that after observing defendant's car, the driver entered the intersection without yielding the right-of-way or in the alternative, that defendant's car was approaching so closely as to constitute an immediate hazard. It also found that the conduct of defendant was not the proximate cause of the collision.

In challenging these findings the plaintiff emphasizes the fact that defendant was intoxicated, and though his view was unobstructed, defendant couldn't recall seeing plaintiff's car before the collision.

There was no obstruction to the view of plaintiff's driver either. He saw defendant's car when it was approximately three hundred feet away. He thought defendant's car was far enough away so that he could "make it," but "at the speed it was coming I guess I couldn't judge that car." After observing defendant's car, and not knowing its speed, the driver never looked at defendant's car again. Looking straight ahead, he proceeded into the intersection with a heavy duty vehicle that "doesn't have the pickup that some other pickup has."

Plaintiff relies on International Service Ins. Co. v. Ortiz, supra, and Beyer v. Montoya, 75 N.M. 228, 402 P.2d 960 (1965). In both cases the drivers entering the through street were successful in their claims. In both cases a right-of-way statute was applicable; the statute involved here, § 64–18–29, N.M.S.A.1953, was also involved in the Beyer case. (This section was repealed by Laws 1965, ch. 91, § 2, and a new § 64–18–29 was enacted.)

It is not necessary to discuss the factual similarities and dissimilarities of Beyer, International Service Ins. Co. and this case. The results in Beyer and International Service Ins. Co. do not require the same result here since in each case the result depends on the facts. In each case the appellate issue was whether the evidence supported the findings of the trial court.

On the issue of negligence, Beyer states:

"* * * While under the evidence the court might have concluded that Mrs. Beyer, as well as Mr. Montoya, were negligent, or that Mr. Montoya was free from negligence, in either of which events recovery would have been denied, it does not follow that the facts demonstrate negligence on the part of Mrs. Beyer as a matter of law, or that the court erred in holding that she was free from negligence as a matter of fact. * * *"

On the issue of proximate cause, Chavira v. Carnahan, 77 N.M. 467, 423 P.2d 988 (1967), states:

"* * * Proximate cause is an ultimate fact—usually an inference to be drawn by court or jury from the facts proved. It becomes a question of law only when facts regarding causation are undisputed and all reasonable inferences therefrom are plain, consistent and uncontradictory."

Here, negligence and proximate cause were questions of fact, to be determined by the trial court. From the evidence, the trial court could find as it did—both on the question of the driver's care and the question of proximate cause. We cannot say as a matter of law that the trial court erred in its determination of these issues.

The judgment is affirmed.

It is so ordered.

CHAVEZ, C. J., and COMPTON and CARMODY, JJ., concur.

NOBLE, J., dissenting.

NOBLE, Justice (dissenting).

I am unable to agree with the majority that this is a case of conflicting evidence presenting a question for the trier of the facts, or that under the undisputed facts of this case, negligence and proximate cause were questions of fact to be determined by the trier of facts. Actually none of the tes-

timony is in conflict. The majority opinion sets out a summary of the essential testimony.

The majority agree, even though Montgomery's view was unobstructed, he did not see the plaintiff's truck prior to the collision. They also agree that the driver of the truck stopped before entering the intersection and saw the Montgomery car approximately 300 feet away, and thinking he had time to cross, proceeded across the intersection. The majority erroneously, I think, place reliance upon the truck driver's testimony that, looking at it with hindsight, he evidently underestimated the speed of the approaching Montgomery car. The result by the majority is reached by applying a rule of the road contrary to the applicable statute and to the rule announced in Nance v. Janser, 77 N.M 714, 427 P.2d 238. The majority decision rests upon:

"After observing defendant's car, and not knowing its speed, the driver never looked at defendant's car again. Looking straight ahead, he proceeded into the intersection with a heavy duty vehicle that 'doesn't have the pickup that some other pickup has.'"

The rule announced by the majority is simply that the driver of a vehicle approaching an intersection from the nonfavored direction proceeds into the intersection at his peril and must, at all events, continue to keep such a lookout as to insure his being able to safely cross ahead of any vehicle approaching from the favored direction. That requirement is clearly contrary to § 64–18–29, N.M.S.A.1953, which, so far as pertinent, reads:

"(a) The driver of a vehicle shall stop * * * at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right of way to the vehicle so proceeding into or across the through highway."

The majority's holding is likewise directly contrary to the intersection rule announced in Nance v. Janser, supra. This decision also grew out of an intersection accident, and the respective rights of the parties at an intersection with a through highway was stated thus:

"After looking to the right and to the left, if he [the driver required to yield] saw no vehicle approaching so closely as to constitute an immediate hazard, he had the right to proceed. The driver of the southbound vehicle [the car approaching on the through highway] did not see Rahles' car before the collision. *She should not have proceeded into the intersection.*" (Emphasis supplied)

Section 64–18–29, supra, expressly grants to the driver approaching from the nonfavored side, who, having stopped and looked, does not see an approaching vehicle so close as to present an immediate hazard, the right to proceed across the intersection. He is no longer required to continue to look, and, in fact, I can see little purpose served by continuing to look after he has entered the intersection. If, acting as a reasonable person, he thought the approaching car presented no immediate hazard, he then has the right to enter and continue across the intersection. The driver of the car approaching on the through highway then must yield the right of way. Section 64–18–29, supra. Thus Janser correctly interpreted and applied the statutory rules respecting the relative rights of drivers approaching such an intersection. Annot., 173 A.L.R., at page 1040. See, also, Beyer v. Montoya, 75 N.M. 228, 402 P.2d 960.

It is apparent that the majority attach great importance to the trial court's finding of an absence of skid marks left on the pavement by the Montgomery car as indicating a lack of excess speed. Absence of skid marks certainly does not support a view that he was not traveling at excessive

speed it is evidence only of the fact that the brakes were not applied. The majority have clearly pointed a logical reason for the failure to apply brakes; they agree that the undisputed testimony discloses that Montgomery did not see the truck prior to the collision.

Absent something to place a reasonable person on notice of excessive speed, the driver of the truck was entitled to assume that the approaching car was being driven within legal speed limits. In my view, a reasonable person, observing an approaching car 300 feet from the intersection, would have a right to believe he could safely cross the intersection.

My quarrel with the majority does not stem from a different interpretation of conflicting evidence, but from the fact that the majority have, in my view, erroneously applied the statute and rules of law, respecting the rights and obligations of drivers of motor vehicles approaching an intersection with a through highway, to uncontradicted facts.

Disagreeing with the intersection rule applied by the majority, I dissent.