466 P.2d 873

Emorie L. BOLEN, Administrator of the Estate of Elaine Gai Bolen, Deceased, and Emorie L. Bolen, Individually, Plaintiff-Appellant,

v.

RIO RANCHO ESTATES, INC., J. E. Drum and Boyd Martin, Defendants-Appellees.

Emorie L. BOLEN, Administrator of the Estate of Elaine Gai Bolen, Deceased, and Emorie L. Bolen, Individually, Plaintiff-Appellant,

v.

Frank SHOFFNER, Defendant-Appellee.

No. 431.

Court of Appeals of New Mexico.

March 6, 1970.

Melvin L. Robins, Lorenzo A. Chavez, Albuquerque, for appellant.

Mary C. Walters, Toulouse, Moore & Walters, Albuquerque, for appellee Drum.

James T. Paulantis, Iden & Johnson, Albuquerque, for appellee Rio Rancho Estates, Inc.

Robert G. McCorkle, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque for appellee Shoffner.

Edward Colby, Albuquerque, for appellee Martin.

## OPINION

WOOD, Judge.

Elaine Bolen died from injuries suffered in an intersection collision. Plaintiff sued the builder of a fence located near the intersection, the owner of the property on which the fence was built, the developer of the land in the area of the intersection and the driver of the vehicle with which Elaine collided. From judgments in favor of each of the defendants, plaintiff appeals. We discuss: (1) the physical facts rule; (2) harmless error in exclusion of evidence; (3) directed verdict; (4) contributory negligence of the parent; and (5) damages for pain and suffering between injury and death. We reverse the judgment in favor of the driver of the adverse vehicle. We affirm as to the other defendants.

*Physical facts rule.*

The accident occurred at the intersection of 19th and Grande Streets in Rio Rancho Estates in Sandoval County. Elaine, driving a motorcycle, traveled east on 19th Street. Martin, driving a pickup truck, traveled south on Grande Street.

Defendant Drum owned the house located at the northwest corner of the intersection. He caused a four foot solid wooden fence to be erected on his property line along 19th and a portion of Grande Streets. Defendant Shoffner built this fence.

Plaintiff alleged both Drum and Shoffner knew or should have known that the fence would constitute a visual obstruction to vehicular traffic and failed to reduce the height of the fence in view of this knowledge. The specific claim of negligence as

to both of these defendants is that the fence obstructed Elaine's view of traffic proceeding south on Grande as she approached the intersection on 19th Street.

The trial court directed a verdict for Shoffner at the close of plaintiff's case. Plaintiff challenges this ruling. Plaintiff claims the trial court erroneously excluded testimony: (a) concerning an Albuquerque ordinance limiting the height of fences in residential areas to three feet and (b) the reasons for this limitation. The jury returned a verdict for Drum. Plaintiff attacks this verdict because of asserted error in the instructions. Drum, by cross-appeal, contends the trial court should have granted his motion for a directed verdict.

The judgments entered in favor of Shoffner and Drum are to be sustained. Even if the trial court should have admitted testimony concerning the Albuquerque ordinance, Shoffner was entitled to a directed verdict. Even if the instructions were in error as to plaintiff's claim against Drum, the case against Drum should not have been submitted to the jury. Drum was entitled to a directed verdict. These results are reached under the physical facts rule.

There are numerous New Mexico cases discussing the physical facts rule. In most of them, application of the rule has been denied. State ex rel. Los Lunas Hospital, etc. v. Montgomery, 78 N.M. 266, 430 P.2d 763 (1967); International Service Ins. Co. v. Ortiz, 75 N.M. 404, 405 P.2d 408 (1965); Massey v. Beacon Supply Company, 70 N.M. 149, 371 P.2d 798 (1962); Rascoe v. Town of Farmington, 62 N.M. 51, 304 P.2d 575 (1956); Alexander v. Cowart, 58 N.M. 395, 271 P.2d 1005 (1954); Johnson v. Mercantile Ins. Co. of America, 47 N.M. 47, 133 P.2d 708 (1943); Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214 (1939); Larsen v. Bliss, 43 N.M. 265, 91 P.2d 811 (1939).

Ortega v. Koury, 55 N.M. 142, 227 P.2d 941 (1951) states the rule.

"Physical facts and conditions may point so unerringly to the truth as to leave no room for a contrary conclusion based

on reason or common sense, and under such circumstances the physical facts are not affected by sworn testimony which in mere words conflicts with them. When the surrounding facts and circumstances make the story of a witness incredible, or when the testimony is inherently improbable, such evidence is not substantial. * * * "

■ The cases denying application of the rule have usually done so either because the physical facts were not established, see Larsen v. Bliss, supra; or because the established physical facts were such that conflicting oral testimony was not inherently improbable, see Crocker v. Johnston, supra. The rule will not be applied if the physical facts show only that the oral testimony is improbable. Alexander v. Cowart, supra. For its application, the physical facts must be such that conflicting oral testimony is inherently improbable. State ex rel. Los Lunas Hospital, etc. v. Montgomery, supra.

The rule was applied in Bolt v. Davis, 70 N.M. 449, 374 P.2d 648 (1962). There the undisputed physical facts showed the bus to be on the extreme right-hand edge of its own lane of traffic. In Ortega v. Koury, supra, a photograph demonstrated there was no obstruction which prevented the defendant from seeing the child.

■ Here, the owner of the motorcycle being used by Elaine testified that while riding east on 19th Street, sitting up on the motorcycle, he could see over the fence until he came to a "yield" sign, that at the sign and "closer" to the intersection he could not see over the fence unless he raised up three or four inches. He testified that he was 5 feet 9 inches tall at the time of the accident, and that Elaine was quite a bit smaller.

Photographs show that at a height four feet above the eastbound lane of travel on 19th Street almost all of the cab of the Martin pickup is visible above the fence. The photographs were taken 75 feet and 50 feet west of the intersection of 19th Street with Grande. They show the pickup

at points 75 feet and 50 feet north of the intersection and in the southbound lane on Grande. Fifty feet west on 19th Street is the place where the "yield" sign was located; one of the places where the motorcycle owner testified he couldn't see unless he raised up.

The owner also testified he couldn't see "closer" to the intersection. Surveyed elevations of the two streets and of the fence at its highest point show that at a height four feet above 19th Street, the pickup, which was over 6 feet in height, would always be visible over the fence.

The motorcycle owner's testimony as to his own obscured vision is inherently improbable because the undisputed physical facts show his vision was not obscured.

But Elaine was smaller. She was 5 feet 2 inches tall. It is undisputed that the seat of a motorcycle "just like" the one in the accident is 31½ inches above the ground. A 5 foot 2 inch female, seated erect on the motorcycle, has an eye level 4 feet 7 inches above the ground. These physical facts render inherently improbable the inference from the motorcycle owner's testimony that Elaine's vision over the fence was obscured because of her size. The physical facts are that anyone with an eye level four feet or higher above 19th Street could see the cab of the pickup over the fence.

We do not know how Elaine was sitting or riding the motorcycle. We do not know her eye level as she traveled on 19th Street. The only inferences as to Elaine's vision being obscured by the fence come from the motorcycle owner's testimony. The physical facts make his testimony inherently improbable. Since his testimony is inherently improbable, there is neither evidence nor inference that Elaine's view of Martin's pickup was obscured by the fence.

The result is there is no factual basis for the theory of negligence asserted against Shoffner and Drum and both were entitled to directed verdicts. There being no factual basis for the theory of negligence, we do not reach the question whether the erection and maintenance of the fence provides a

legal basis for imposing liability upon them. See Rest. Torts 2d, § 371 (1966).

*Harmless error in exclusion of evidence.*

Rio Rancho (Rio Rancho Estates, Inc.) was the owner and developer of the land with which this suit is concerned. It had imposed protective covenants upon lots in the subdivision, including a restriction limiting the height of fences to four feet. It had laid out the streets and dedicated them to public use. The streets—19th, Grande, and their intersection—were public streets at the time of the accident. Although public streets, Rio Rancho maintained them.

Plaintiff alleged that Rio Rancho permitted Drum to erect the fence asserted to obstruct Elaine's view of traffic on Grande. We have held there is no factual basis for this contention. Plaintiff also alleged that Rio Rancho " * * * erected an unauthorized traffic sign to control eastbound traffic on 19th Street which increased the hazard of injury to persons using the street. * * *"

■ The traffic sign is the "yield" sign previously mentioned. The sign was adjacent to the paved portion of 19th Street and faced travelers going east. The evidence does not show whether Rio Rancho caused this sign to be erected. Plaintiff attempted to show the "yield" was replaced by a "stop" sign after the accident. The trial court ruled that plaintiff would not be permitted to show changes made after the accident. Plaintiff contends this ruling was error. Plaintiff asserts the evidence was admissible to show Rio Rancho's control over the sign. See Annot., 64 A.L.R.2d 1296, at 1311 (1959). We do not decide whether the ruling was error.

Evidence, received without objection, shows Rio Rancho generally exercised control over traffic signs, that it, through its property manager, knew of the existence of the "yield" sign for some time prior to the accident, and that it caused this sign to be replaced after the accident. This evidence establishes that Rio Rancho did exercise control over the sign even if it may not have erected it. Since there was evidence of Rio Rancho's control, exclusion of other evidence offered solely to show control, was harmless. Crouch v. Most, 78 N.M. 406, 432 P.2d 250 (1967).

*Directed verdict.*

■ Since there is evidence that Rio Rancho exercised control over the "yield" sign, the question is whether the trial court erred in directing a verdict in favor of Rio Rancho. Plaintiff's theory is that the sign, over which Rio Rancho exercised control, increased the hazard for Elaine in using the street. Was there evidence or inference of an increased hazard? Garcia v. Barber's Super Markets, Inc. (Ct.App.), 81 N.M. 92, 463 P.2d 516, decided December 19, 1969.

The sign was adjacent to a public street in Sandoval County. Local authorities are authorized to place and maintain traffic-control devices upon highways in their jurisdiction. Section 64–16–3, N.M.S.A. 1953 (Repl.Vol. 9, pt. 2). The Sandoval County Commission had not authorized the sign. There is no evidence as to whether the sign was authorized by the State Highway Department. We assume the sign was unauthorized. On the basis that the sign was unauthorized, plaintiff contends Rio Rancho maintained it in violation of § 64–16–8, N.M.S.A.1953 (Repl. Vol. 9, pt. 2). We agree that an unauthorized sign is a statutory violation. How did this increase Elaine's hazard in using the street?

(a) The fact that it was an unauthorized "yield" sign did not increase the hazard. The "yield" was a warning to Elaine that travelers on Grande had a "preferential right of way." Section 64–18–29, N.M.S.A.1953 (Repl.Vol. 9, pt. 2, Supp.1969). Even though not de jure, it was a de facto warning concerning the right of way. Sellman v. Haddock, 66 N.M. 206, 345 P.2d 416 (1959); Mayfield v. Crowdus, 38 N.M. 471, 35 P.2d 291 (1934).

(b) The sign was located fifty feet back from the west edge of the intersection and

was in place before Drum erected his house and fence. Plaintiff asserts the erection of the sign at this location increased the hazard. This is incorrect because when the sign was erected Drum's property was a vacant lot.

(c) Plaintiff claims: " * * * By failing to effectively keep persons out of the intersection with a stop sign which is much more imperative and effective than a sign saying yield, it created undue hazard of injury. * * * " There is nothing in the record indicating a "yield" sign increases the traveler's hazard over the hazard existing when there is a "stop" sign. The difference is between slowing down and stopping, § 64–18–29, supra, but both—yield and stop—warn the traveler to avoid a vehicle which is so close as to "constitute an immediate hazard." Compare paragraphs (B) and (C) of § 64–18–29, supra.

Nothing in (a), (b) or (c) amounts to evidence or inference of an increased hazard.

(d) After Drum's house and fence were built the yield sign was located across 19th Street from the fence at a point 36½ feet west of the eastern edge of the fence. Because the fence partially blocked the view of traffic on Grande, plaintiff contends Rio Rancho should have moved the sign toward the intersection, to a point where the fence no longer obscured any part of the view. The failure to do this is asserted to permit an inference of increased hazard.

(e) If there had been no sign of any kind, Elaine would have been approaching an uncontrolled intersection. If the intersection had been uncontrolled, Elaine would have had the right of way. (This is a factual question, but we will assume it to be true). Plaintiff asserts the control present—the "yield" sign—deprived Elaine of the right of way and the failure of Rio Rancho to remove the sign increased her hazard.

(f) Martin, driver of the pickup, knew the "yield" sign was on 19th Street and relied on this sign to keep traffic out of the intersection as he approached. See Mayfield v. Crowdus, supra. Plaintiff states: " * * * [C]ertainly one of the inferences that arises from the evidence given by Mr. Martin is that he would have been more cautious in approaching the intersection had the sign not been there. * * * By not relying upon the sign, Martin would have permitted the girl to enter the intersection and would have taken some precaution to avoid hitting her. * * * " Thus, plaintiff again contends the failure of Rio Rancho to remove the sign increased Elaine's hazard.

We assume that (d), (e) and (f) permit an inference of increased hazard and thus an inference of negligence on the part of Rio Rancho. But in addition to negligence, there is the question of proximate cause. See Rekart v. Safeway Stores, Inc. (Ct.App.), No. 390, decided February 13, 1970. What do any of these inferences of increased hazard have to do with the cause of this accident? We agree with Rio Rancho; we have nothing but speculation. There is nothing to indicate the failure to move the sign or the failure to take it down was the proximate cause of the accident. Rekart v. Safeway Stores, Inc., supra.

Plaintiff relies on Campbell v. City of Palm Springs, 218 Cal.App.2d 12, 32 Cal. Rptr. 164 (1963). There were tamarisk trees, maintained by the City, which obstructed the view. It was "almost a completely blind intersection." This lack of a view was held to be the proximate cause of the accident because the driver emerging from the blind intersection panicked a driver on the through street and the panicked driver ran into plaintiff's vehicle. This case would be more nearly applicable to plaintiff's claim against Drum for it's Drum who built the fence in this case. It is not applicable as to Drum because the undisputed physical facts show there was no blind intersection in this case. It is not applicable as against Rio Rancho because it did not maintain any property which obscured Elaine's vision.

There being neither evidence nor inference that defendant's control of the yield sign was negligence that proximately caused the accident, the trial court correctly directed a verdict in favor of Rio Rancho.

*Contributory negligence of the parent.*

Having affirmed the judgments in favor of Shoffner, Drum and Rio Rancho, this and the following issue applies only to Martin.

Plaintiff, the father of Elaine, sued in a dual capacity. In his capacity as administrator he sought damages for the wrongful death of his daughter. In his individual capacity he sought damages which he had suffered, as an individual.

The jury was instructed that if Elaine was contributorily negligent, plaintiff could not recover under either capacity. No issue is raised as to this instruction. Baca v. Baca, 71 N.M. 468, 379 P.2d 765 (1963); see Sanchez v. J. Barron Rice, Inc., 77 N.M. 717, 427 P.2d 240 (1967).

The jury was also instructed that if the parent was contributorily negligent, the parent could not recover. No issue is raised as to the completeness of this instruction or its applicability to the wrongful death claim. Compare Baca v. Baca, supra; N.M.U.J.I. 13.2, 13.3 and 13.4.

Plaintiff claims no instruction should have been given, over his objection, as to the contributory negligence of the parent. He asserts there was no evidence as to the parent's contributory negligence. We agree.

Both parents had told their fourteen year old daughter not to ride motorcycles. There is nothing indicating either parent, in any way, condoned, acquiesced or consented to Elaine riding a motorcycle.

There is no evidence to infer contributory negligence on the part of the parents in connection with Elaine's fatal motorcycle ride. Montoya v. Winchell, 69 N.M. 177, 364 P.2d 1041 (1961). Nor is there anything else in the record indicating contributory negligence on the part of the parents in connection with plaintiff's claim against Martin. The instruction on contributory negligence of the parents injected a false issue and requires a new trial as to Martin. Embrey v. Galentin, 76 N.M. 719, 418 P.2d 62 (1966); State ex rel. State Highway Comm. v. Atchison, Topeka and Santa Fe Railway Co., 76 N.M. 587, 417 P.2d 68 (1966).

*Damages—pain and suffering between injury and death.*

Plaintiff sought damages for Elaine's pain and suffering between injury and death. The trial court dismissed this claim. Stang v. Hertz Corporation (Ct.App.), 81 N.M. 69, 463 P.2d 45, decided November 26, 1969, held such damages could be recovered by decedent's personal representative. We avoid any "law of the case" decision here by declining to decide this issue. We do so because our *Stang* decision is being reviewed by our Supreme Court, certiorari having been granted on January 2, 1970. The Supreme Court decision will control at the new trial.

The judgments in favor of Shoffner, Drum and Rio Rancho are affirmed. The judgment in favor of Martin is reversed. Plaintiff is awarded a new trial as to Martin.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.