903 P.2d 852 (1995)
120 N.M. 541
In the Matter of the ESTATE OF Fred STROZZI, Deceased.
Elsie BARBER, et al., Petitioners-Appellees,
v.
Mary Elizabeth POUND and Mary Helen Charlene Olney, Respondents-Appellants.
No. 15454.
Court of Appeals of New Mexico.
August 21, 1995.
Certiorari Denied September 22, 1995.
*853 Kenneth B. Wilson, Roswell, for Petitioners-Appellees.
Jack Smith, Smith & Smith Law Offices, P.A., Albuquerque, for Respondents-Appellants.

OPINION
BOSSON, Judge.
Respondents filed a motion for rehearing on July 12, 1995, after our opinion was filed. Although we have denied the motion for rehearing, our previous opinion filed on June 6, 1995, is withdrawn and the following opinion is substituted in its place.
A jury verdict set aside the Will of Fred Strozzi because it was procured through undue influence. On appeal, we examine whether the trial court properly instructed the jury on elements of undue influence and lack of testamentary capacity. We affirm the verdict.

FACTS
In June 1987, at the age of eighty-six, Strozzi inherited a $1 million ranch estate from his brother Allie Strozzi. Throughout his life Strozzi suffered from both physical and mental handicaps. There was testimony that Strozzi never proceeded beyond the mental age of 15 to 16 years old. The day after Allie's funeral, Respondents Mary Elizabeth Pound (Betty) and her daughter Mary Helen Charlene Olney (Sissy) visited Strozzi at his home. Betty was tangentially "related" to Strozzi by marriage; the brother of Betty's father was married to Strozzi's sister. Betty and Sissy visited Strozzi at his house every day for the next three weeks and every other day thereafter for the next three or four months.
In August 1987, Petitioner Dean Thomas (Thomas), Strozzi's grandnephew, filed a civil complaint seeking a conservatorship for Strozzi. Strozzi resisted the appointment. Ultimately, Thomas and Strozzi reached a stipulated agreement, which recognized Strozzi as competent. During the conservatorship proceedings Strozzi disclosed that, only weeks after Allie's death, he had prepared a will devising his estate to a neighbor, Robert Nathan Hall.
Around November 1987 Strozzi injured himself in a fall. Immediately thereafter, Betty, her husband Smokey Pound, and Sissy moved a trailer home next to Strozzi's house. Together the Pounds cleaned, cooked, and generally took care of Strozzi for the next several years until his death on March 26, 1992. On September 9, 1988, approximately fifteen months after Allie's death, Strozzi revoked his prior will to Hall and executed a new will devising the vast majority of his estate to Betty and Sissy. Strozzi never executed another will.
As co-personal representatives, Betty and Sissy offered Strozzi's Will for probate in informal proceedings. Petitioners filed for a formal testacy proceeding, seeking a declaration that the Will was void because it was the product of undue influence and because Strozzi lacked testamentary capacity. Petitioners were Strozzi's closest blood relatives and heirs at law, although they were only distantly related. At trial, the jury found that although Strozzi did have sufficient testamentary capacity to make a will, Strozzi was under the undue influence of Respondents when he executed this particular Will, and accordingly, the Will should be set aside.

DISCUSSION

Jury Instruction Regarding Confidential Relationship
Respondents' first allegation of error pertains to Jury Instruction No. 4 and the elements of undue influence, specifically the requirement *854 of a confidential relationship. Jury Instruction No. 4 advised the jury:
To establish the claim of undue influence of the [Respondents] upon Fred Strozzi, the [Petitioners] must show:
1. That the [Respondents] occupied a position of trust and confidence in the mind of Fred Strozzi and
2. That the [Respondents] used that position to unfairly and improperly influence Fred Strozzi to his injury, or to the injury of those persons he would have benefitted in the absence of the influence.
ALTERNATIVELY, [Petitioners] must show:
[Respondents] unfairly and improperly influenced Fred Strozzi as to prevent him from exercising a free and understanding judgment when he executed his will.
Undue influence, in order to make a will void, must be directly connected with its execution and must operate at the time it was made.
Respondents argue that the language following "ALTERNATIVELY," erroneously allowed the jury to find undue influence without a confidential relationship.
The parties discussed this instruction when settling jury instructions. Respondents offered an instruction containing the first part of Jury Instruction No. 4, but without the alternative portion. The trial court was not certain that a confidential relationship was a prerequisite of undue influence, and the court properly sought guidance from both counsel. Counsel for Petitioners felt that a confidential relationship was not required; counsel for Respondents was indecisive. During the discussion, the trial court asked, "Well, am I correct in saying that you have to show a confidential relationship to get undue influence?" Both parties answered "No." Neither party advised the trial court unequivocally that a confidential relationship was required.
Eventually, Respondents directed the trial court to a definition of undue influence approved by this Court in In re Will of Ferrill, 97 N.M. 383, 393, 640 P.2d 489, 499 (Ct.App.1981), cert. quashed, 98 N.M. 51, 644 P.2d 1040 (1982), and that definition became the alternative portion added to Jury Instruction No. 4. Respondents continued to request that Jury Instruction No. 4 be limited to the part preceding the alternative portion, although without clearly articulating a reason. Respondents now argue that this addition to Jury Instruction No. 4 was error, because it allowed the jury to find undue influence without first finding a confidential relationship. We have substantial concerns about whether, in all fairness, Respondents effectively preserved the error they now claim on appeal. See, e.g., Gracia v. Bittner, 120 N.M. 191, 194-96, 900 P.2d 351, 354-56 (1995) (N.M.Ct.App.1995); see also Salinas v. John Deere Co., 103 N.M. 336, 707 P.2d 27, certs. quashed, 103 N.M. 287, 705 P.2d 1138 (1985). However, as we shall discuss, because we are confident this issue was inconsequential to Respondents at trial, we will proceed to discuss the claim.
We need not determine in this opinion whether a confidential relationship is an essential element of undue influence, such that it must actually be included in the jury instructions, or more a matter of evidence which, combined with other factors, tends to prove undue influence. We do note that a confidential relationship appears to be ubiquitous in our own case law and is present in the most recent cases. See, e.g., Lucero v. Lucero, 118 N.M. 636, 641-42, 884 P.2d 527, 532-33 (Ct.App.1994); Doughty v. Morris, 117 N.M. 284, 288-89, 871 P.2d 380, 384-85 (Ct.App.1994); In re Estate of Gonzales, 108 N.M. 583, 585-86, 775 P.2d 1300, 1302-03 (Ct.App.1988), cert. quashed, 108 N.M. 197, 769 P.2d 731 (1989). Abuse of a confidential relationship figures prominently in the discussions offered in various treatises and authorities. See, e.g., 2 Dan B. Dobbs, Law of Remedies § 10.3 (2d ed. 1993); 12 Samuel Williston, A Treatise on the Law of Contracts § 1625 (3d ed. 1968); Restatement (Second) of Contracts § 177 (1981). Although it may be theoretically possible to exercise undue influence in the absence of trust and confidence, see Restatement (Second) of Contracts § 177 cmt. b, at 492, it would be the *855 unusual circumstance.[1]See SCRA 1986, 13-839 (Repl.1991) (including the element of an "abuse of a close or special relationship" in the uniform jury instruction on undue influence in contracts).
For purposes of this analysis, we assume, without deciding, that a confidential relationship is a necessary element of undue influence. However, the absence of that element from the instructions in this case does not necessarily result in reversible error. The trial court instructed the jury on the definition of a confidential relationship, which Respondents accepted without objection: "A confidential relationship exists whenever trust and confidence is reposed by one person in the integrity and fidelity of another." Accordingly, by arguing now that it was reversible error not to include a confidential relationship in all aspects of Jury Instruction No. 4, Respondents are saying that the trial court should have required the jury to find as an essential element of undue influence that Strozzi reposed trust and confidence in the integrity and fidelity of Respondents.
However, our review of the record and the evidence shows that the omission of this language could not have affected the verdict. We fail to discern any rational view of the evidence, and Respondents have not suggested any, under which the jury could have found undue influence pursuant to the alternative portion stated in Jury Instruction No. 4 without also finding that Strozzi reposed trust and confidence in the integrity and fidelity of Respondents. The entire thrust of Petitioners' case was that Respondents had ingratiated their way into Strozzi's confidence. Respondents did not argue to the jury that their relationship with Strozzi was not one of trust and confidence. This was a given, a nonissue below. If the jury did not adopt at least the gist of this theory, it could not, as far as we can tell, have rendered the verdict in this fashion. Therefore, even if we were to decide that Jury Instruction No. 4 erroneously omitted a specific reference to a confidential relationship, any such error was inconsequential and harmless. See Flores v. Baca, 117 N.M. 306, 314, 871 P.2d 962, 970 (1994); cf. Santillanes v. State, 115 N.M. 215, 223, 849 P.2d 358, 366 (1993). Perhaps the overwhelming evidence demonstrating a relationship of trust and confidence is one reason Respondents did not try harder to object to the alternative portion of Jury Instruction No. 4. At any rate, given our faith in the good sense and conscientiousness of the jury, we will not presume prejudicial error where all signs point to the contrary.
Respondents also contend that Petitioners failed to prove a prima facie case of undue influence and that Respondents were therefore entitled to a directed verdict. We do not agree. The record reveals that Respondents' motion for directed verdict was immediately denied by the trial court. Respondents then proceeded with their case, thereby waiving any challenge to the sufficiency of the evidence up to that point. See Andrus v. Gas Co. of New Mexico, 110 N.M. 593, 595, 798 P.2d 194, 196 (Ct.App.), cert. denied, 110 N.M. 260, 794 P.2d 734 (1990); see also Board of Trustees of the Town of Las Vegas v. Montano, 82 N.M. 340, 481 P.2d 702 (1971). After the jury verdict, Respondents moved for a judgment notwithstanding the verdict, which was also denied. This motion preserved for appeal Respondent's challenge to the sufficiency of the evidence. The denial of a judgment notwithstanding the verdict is reviewed for substantial evidence. See Page & Wirtz Constr. Co. v. Solomon, 110 N.M. 206, 209, 794 P.2d 349, 352 (1990).
Respondents do not contest that the verdict must be affirmed if Petitioners established the existence of a confidential relationship and certain suspicious circumstances. See Doughty, 117 N.M. at 288, 871 P.2d at *856 384 ("A presumption of undue influence arises when a confidential or fiduciary relationship exists and other suspicious circumstances are shown."). There is substantial evidence, close in time to the creation of the Will, which is highly probative of both a confidential relationship and its abuse. Perhaps the strongest corroborative evidence of a confidential relationship is Betty's own testimony regarding their continual presence at Strozzi's house and in all aspects of Strozzi's life in the days, months, and years after Allie's death. Almost from the beginning, Respondents wrote checks on Strozzi's behalf; Strozzi would sign his name on a blank check, and Respondents would fill out the remainder. After the execution of Strozzi's Will, this practice evolved to the point where Smokey Pound even had his own signature included on Strozzi's bank account, and he executed the checks on Strozzi's behalf. Strozzi confirmed the underpinnings of a confidential relationship when he stated at his deposition during the conservatorship proceedings that the Pounds were the "best neighbor[s] that I had" and that the Pounds "do honest work. I trust them." See Doughty, 117 N.M. at 289, 871 P.2d at 385 (confidential relationship found where son lived with mother for last five years of her life and mother confided her most crucial affairs to him); Ferrill, 97 N.M. at 387, 640 P.2d at 493 (a confidential relationship is found "`whenever trust and confidence is reposed by one person in the integrity and fidelity of another'"), citing 94 C.J.S. Wills § 230, at 1078 (1956).
In addition to a confidential relationship, there was evidence of the kind of suspicious circumstances that create a rebuttable presumption of undue influence for the jury's consideration.[2] A $1 million ranch estate is an extraordinary amount of consideration for the work Respondents performed over only the last few years of Strozzi's life, or so the jury could have concluded in light of the evidence. Before Allie's death the Pounds had visited Strozzi at his house only once in six years, yet after Strozzi inherited the ranch, they were there constantly. Furthermore, Mike Schoonover, Strozzi's grandnephew, testified that while visiting Strozzi in July of 1987, he overheard a conversation in which Betty urged Strozzi to sign over a portion of his estate to her. Schoonover further testified that he saw get-well cards from the Pounds addressed to "Uncle Fred." Schoonover found a photo album which contained pictures he did not recognize. When asked about the pictures, Strozzi responded that the pictures were his "family" and that he was their "uncle." The pictures were of the Pounds. It is undisputed that Strozzi was not the Pounds' uncle. There was also evidence that Strozzi became increasingly isolated, even from old friends and neighbors, the more he grew dependent on the care of Respondents.
Respondents make much of the lack of direct evidence showing that Strozzi's advanced age or disability made him particularly susceptible to undue influence. Respondents cite Lucero and Gonzales, two recent cases from this Court which reversed judicial findings of undue influence because there was no specific evidence connecting decedent's age or poor health to any actual mental infirmity. However, old age or weakened condition constitutes only one of numerous "suspicious" circumstances which can support a finding of undue influence. See Doughty, 117 N.M. at 288-89, 871 P.2d at 384-85. Jury Instruction No. 5 correctly instructed the jury as to these other suspicious circumstances, any one of which was sufficient to support a presumption of undue influence. *857 Thus, even if we accept Respondents' contention that Petitioners failed to establish that Strozzi suffered from an infirmity that made him particularly susceptible to undue influence, the additional factors noted in Jury Instruction No. 5 distinguish both Lucero and Gonzales. Petitioners did not rely solely on old age and infirmity to make their case.

Instruction on the "Natural Object of One's Bounty"
The second alleged error in regard to the instructions occurred during jury deliberations, when the jury sent a message requesting that the trial court define the meaning of "the natural objects of his bounty," as set forth in Jury Instruction No. 3 on testamentary capacity: "[t]o establish the claim of [Petitioners] that Fred Strozzi lacked testamentary capacity, [Petitioners] must show that at the time of making his Will, Fred Strozzi ... did not know the natural objects of his bounty." When this request for clarification arrived from the jury, Respondents requested no response, arguing that this was a factual determination for the jury to decide. Nonetheless, the trial court did advise the jury that:
The natural objects of Fred Strozzi's bounty are ordinarily those persons designated to inherit from him in the absence of a will. However, that term does not necessarily mean that he should know and recognize every relative who is entitled to inherit from him under the existing laws of descent.
The jury ultimately found that Strozzi did have the necessary mental capacity to make his Will and by inference that Strozzi knew who were the "natural objects of his bounty."
Respondents assert that this definition was erroneous because no New Mexico case holds that a mere collateral relative, like Petitioners, are by that relationship alone the "natural objects of a person's bounty." See generally L.S. Tellier, Annotation, Instructions, in will contest, defining natural objects of testator's bounty, 11 A.L.R.2d 731 (1950); 28 Words and Phrases, "Natural Object of Testator's Bounty" (1955). Respondents also maintain that the trial court's definition wrongly required them to rebut a presumption that the Petitioners were the "natural objects of Strozzi's bounty." The simple response to Respondents' argument is that the point is moot, because the jury found in Respondents' favor on this issue.
However, in their reply brief and again at oral argument, Respondents attempt to connect this point to undue influence and not just testamentary capacity. Respondents argue that the trial court's definition supplementing Jury Instruction No. 3 also confused the jury in regard to Jury Instruction No. 5, which included a bequest that is "unnatural and unjust" in the itemization of suspicious circumstances sufficient to create a presumption of undue influence. Respondents reason that if the trial court incorrectly advised the jury that Petitioners were included in the natural objects of Strozzi's bounty, then the court essentially instructed the jury that a bequest to anyone other than Plaintiffs was "unnatural or unjust." Accordingly, in Respondents' view, the jury had no choice but to find undue influence.
Again, we disagree. It would be a stretch to assume that the jury took the definition of "natural objects of his bounty" from Jury Instruction No. 3, regarding testamentary capacity, and misapplied it to the definition of "unnatural and unjust" in Jury Instruction No. 5 regarding undue influence. See Gonzales v. Sansoy, 102 N.M. 136, 137, 692 P.2d 522, 523 (1984) (presumptions are in favor of verdicts and reviewing court will indulge all reasonable inferences in support of verdicts); cf. Green v. Watson, 224 Cal.App.2d 184, 36 Cal.Rptr. 362, 368 (1964) (reviewing court is not permitted to seek out possible and strained construction of words used in instruction and infer that jury followed the distorted interpretation). The two phrases are different; they are located in different instructions, and they are directed towards different claims in the case. Respondents fail to demonstrate any likelihood that the jury was confused by this definition, and in fact Respondents did not argue this point to the trial court at the time the matter was under consideration. The verdict appears free from any inherent ambiguity. Respondents' argument would force this Court into *858 impermissible speculation, and we decline to do so.

Notice
Finally, Respondents claim error from a failure in the probate proceedings to provide statutory notice to Hall as a principal beneficiary of the prior will and one entitled to such notice under law. See NMSA 1978, § 45-3-403 (Repl.Pamp.1993). Section 45-3-403 states that upon commencement of a formal testacy proceeding:
Notice shall be given to the following persons: the surviving spouse, children and other heirs of the decedent (who would have taken had the decedent died intestate); the devisees and personal representatives named in any will that is being, or has been, probated, or offered for informal or formal probate in the county, or that is known by the petitioner to have been probated, or offered for informal or formal probate elsewhere; and any personal representative of the decedent whose appointment has not been terminated. Notice may be given to other persons. In addition, the petitioner shall give notice by publication to all unknown persons and to all known persons whose addresses are unknown who have any interest in the matters being litigated.
In this case, this notice statute does not appear to address Hall's situation as the devisee of a prior but revoked will which has not been offered for informal or formal probate. The closest provision of the statute appears to be that "[n]otice may be given to other persons," which by its terms is permissive, not mandatory, notice. Respondents cite to a Comment to the Uniform Probate Code which is identical to Section 45-3-403(B). The Comment states: "[n]otice requirements extend also to persons named in a will that is known to the petitioners to exist, irrespective of whether it has been probated or offered for formal or informal probate, if their position may be affected adversely by granting of the petition." Uniform Probate Code § 3-403, 8 U.L.A. 275 (1983). The comment continues, however, that there is no "rigid statutory requirement relating to such persons." In any event, even if we were to assume that this Comment applied, it would not help Respondents' cause. Hall was not "adversely affected" by the probate proceedings. To the contrary, he stood to benefit because voiding the second will would only revive the first will and his interest as the primary beneficiary. Furthermore, any objection must be voiced by Hall and not a third party. In this case, Hall has not objected and Respondent cannot make this assertion for him.
Finally, on March 31, 1994, Petitioners entered into an Amended Stipulation of Settlement with Hall, whereby Hall abandoned any claims he might have under any of the Strozzi wills and conveyed those rights to Petitioners. As a result, Hall no longer has an interest in Strozzi's estate. The issue is now moot.

CONCLUSION
The judgment on the jury verdict setting aside the Will of Fred Strozzi is affirmed.
IT IS SO ORDERED.
ALARID and HARTZ, JJ., concur.
NOTES
[1] At oral argument, Petitioners' counsel suggested that a stranger pointing a gun to testator's head causing the testator to devise his estate to the stranger was an example of undue influence without a confidential relationship. We disagree. This would be duress, rather than undue influence. See 2 Dobbs, supra, § 10.2(3); see also William J. Bowe & Douglas H. Parker, 1 Page on Wills § 15.4, at 722 (1960 & Cum.Supp.1995) ("A suggestion by one who occupies a dominant position in the relation of trust and confidence, such as an attorney, may amount to undue influence, although such a suggestion, if made by a stranger, would not amount to undue influence." (footnotes omitted)).
[2] Instruction 5 states:

If you find that a confidential relationship existed between the decedent and [Respondents] and that:
1. Fred Strozzi was old, in a weakened physical or mental condition; or
2. There was a lack of consideration given by the [Respondents] for the bequest; or
3. The bequest is unnatural or unjust; or
4. The [Respondents] participated in procuring the will; or
5. The [Respondents] dominated Fred Strozzi; or
6. The [Respondents] unduly profited from the will,
You may find that the will was procured by the undue influence of [Respondents].
A confidential relationship exists whenever trust and confidence is reposed by one person in the integrity and fidelity of another.