1998-NMSC-013

960 P.2d 811

**In the Matter of the ESTATE OF Frank V. GERSBACH, deceased,**

**Mae GERSBACH, Petitioner–Respondent,**

v.

**Tom WARREN, Respondent–Petitioner.**

No. 24214.

Supreme Court of New Mexico.

May 13, 1998.

Gerding & O'Loughlin, P.C., Richard L. Gerding, Farmington, for Petitioner–Respondent.

Tucker Law Firm, P.C., Steven L. Tucker, Santa Fe, for Respondent–Petitioner.

## OPINION

MINZNER, Justice.

{1} Tom Warren appeals from a decision of the Court of Appeals affirming the trial court's judgment in favor of Mae Gersbach. The trial court granted Mrs. Gersbach's petition to declare a portion of her husband's will void as a result of undue influence. In voiding a portion of the will, the trial court found that Mr. Gersbach and Warren had a confidential relationship, and that several suspicious circumstances surrounded a devise to Warren. The suspicious circumstances identified by the trial court included secrecy on Mr. Gersbach's part and the fact that in a prior will Mr. Gersbach had made a different disposition of the property at issue. The trial court concluded that "[t]he existence of the confidential relationship, coupled with the suspicious circumstances gives rise to a presumption that the devise ... in the [later] will was a result of the undue influence of Tom Warren...." We hold that Mrs. Gersbach did not present sufficient evidence to support the finding of secrecy and that the remaining findings do not support a presumption of undue influence. We conclude that Mrs. Gersbach did not satisfy her burden of proof at trial, and we therefore reverse and remand.

### I.

{2} Mr. and Mrs. Gersbach executed wills in 1979 and 1985. In the 1979 will, Mr. Gersbach left everything to his wife, if she survived him. If she did not survive him, he willed an eighty-acre farm near Waterflow, New Mexico, to the New Mexico Military Institute, subject to Warren's exercise of an option to buy the farm at seventy-five percent of the appraised value. Mrs. Gersbach's 1979 will contained similar provisions. She left everything to her husband, if he survived her; but, if he did not survive her, she devised the Waterflow farm to the New Mexico Military Institute, subject to Warren's option. In 1985, the Gersbachs executed new wills. Mr. Gersbach's 1985 will devised the Waterflow farm to Warren. Mrs. Gersbach's 1985 will recognized that the farm was her husband's separate property and, further,

she devised any interest she might have in the farm to Warren.

{3} The trial court found that "[p]rior to and subsequent to the execution of the will, Frank B. Gersbach had explained to his wife that the purpose [of the 1985 will] was to see that the children of [Warren] got the ranch if she did not need it or want it." The Court of Appeals noted that Mrs. Gersbach testified that Mr. Gersbach told her that it "would be alright if [Warren] had the property if he would not sell it and keep it for [Warren's] kids." *Gersbach v. Warren*, No. 17,302, slip op. at 5 (N.M.Ct.App. Mar. 6, 1997).

{4} Mr. Gersbach met Warren through Warren's father. Mr. Gersbach and Warren's father had been friends a long time. Mr. Gersbach rented the farm to Warren for many years, for a nominal amount of rent. Warren paid rent once a year and if he was late, Mr. Gersbach charged no interest; he permitted Warren to pay the balance due as he was able. Over the course of their relationship, Warren and his family visited the Gersbachs once a year, but Warren and Mr. Gersbach talked by telephone frequently.

{5} The trial court found that Mrs. Gersbach had presented proof of facts, "of which the Court has an abiding conviction," that Warren and Mr. Gersbach had a confidential relationship, and that several suspicious circumstances surrounded the will. Those circumstances were:

a. No consideration was present for the gift of approximately one-half (1/2) of the Decedent's Estate to Respondent with Decedent receiving nothing in return and Respondent's wife of almost fifty years [receiving nothing] in return.

b. The disposition to a non-family member was unnatural and contrary to the natural disposition which occurred in 1979.

c. An element of secrecy existed in that Decedent communicated to Petitioner that the purpose of the will changes was to see that Respondent received the ranch and would keep it for his children only if Petitioner did not want or need the ranch.

d. Decedent, Frank B. Gersbach, was suffering from a loss of short term memo-ry giving rise to an issue as to his competency and further that his vision had failed as a result of macular degeneration.

e. No specific evidence exists to establish that the Petitioner participated in the making of either will.

f. No discussion occurred which communicated to Petitioner the effect of the change.

g. Subsequent to the execution of the will, Respondent was able to obtain substantial loans and gifts without consideration.

The trial court concluded that the devise to Warren of the Waterflow farm was "void and of no effect and the Waterflow, New Mexico ranch passes to Petitioner, Mae Gersbach, pursuant to the residuary clause of the August 12, 1985 will and testament." The court subsequently entered judgment in favor of Mrs. Gersbach.

{6} Warren appealed to the Court of Appeals, which affirmed the trial court in a memorandum opinion. The Court of Appeals reviewed the trial court's findings for substantial evidence and concluded that, taken as a whole, there was sufficient evidence to support the trial court's "conclusion of a presumption of undue influence which was not rebutted by Respondent." *Gersbach v. Warren*, slip op. at 11. The Court of Appeals relied on the existence of a confidential relationship and three suspicious circumstances: an element of secrecy on the part of Mr. Gersbach, the lack of consideration for the gift, and the disposition to a non-family member contrary to the disposition in the 1979 will. The Court of Appeals rejected Warren's suggestion that a lack of consideration is not a suspicious circumstance in the case of a testamentary disposition; "[g]iven the nature of the concept of undue influence, strict definitions are not necessarily useful analytical tools." *Gersbach v. Warren*, slip op. at 7. The Court of Appeals also rejected Warren's alternative suggestion that, to the extent an appellate court takes into account a lack of consideration, the court's analysis is related to the broader question of whether a disposition may be characterized as "unjust." *Id.* at 8. Finally, the Court of Appeals rejected Warren's suggestion that his friendship with

Mr. Gersbach "constitutes the necessary consideration." *Id.*

{7} We granted certiorari in order to consider the relevance of a lack of consideration in this case as well as the appropriate analysis of an "unjust" disposition. We now reverse. We agree that there was sufficient evidence to support a finding that Warren had a confidential relationship with Mr. Gersbach, but we do not believe that there is sufficient support in the record for the conclusion that a presumption of undue influence arose.

## II.

{8} Undue influence is not "susceptible of any fixed formula." *Hummer v. Betenbough,* 75 N.M. 274, 282, 404 P.2d 110, 116 (1965) (quoting *Brown v. Cobb,* 53 N.M. 169, 172, 204 P.2d 264, 266 (1949)). In fact, "New Mexico courts have refused to state a legal definition of undue influence." Mary Catherine McCulloch, Comment, *Undue Influence in Wills—Evidence—Testators' Position Changes After In re Will of Ferrill,* 13 N.M.L.Rev. 753, 755–56 (1983) (characterizing the Court's analysis as avoiding "a blue print for the commission of a wrongful act"). We have, instead, "described the approach contestants must use to prove an undue influence claim." *Id.* at 755. We have held that a confidential relationship is required in order to support a determination of undue influence. *Hummer,* 75 N.M. at 282, 404 P.2d at 116. In addition to a confidential relationship, however, suspicious circumstances must also exist. *Id.* at 280, 404 P.2d at 114.

> Some circumstances found to be suspicious in undue influence cases are (1) old age and weakened physical or mental condition of testator; (2) lack of consideration for the bequest; (3) unnatural or unjust disposition of the property; (4) participation of beneficiary in procuring the gift; (5) domination or control over the donor by a beneficiary; and (6) secrecy, concealment, or failure to disclose the gift by a beneficiary.

*Montoya v. Torres,* 113 N.M. 105, 110, 823 P.2d 905, 910 (1991). This is not an exhaustive list, nor is it a list of circumstances that are always suspicious. Furthermore, the presence of any of these circumstances is not in itself dispositive. "In making its determination the court must answer the question of whether the donor would have made the gift but for the undue influence exerted over him or her." *Id.* "Undue influence exists when 'testator's volition at the time of testamentary act was controlled by another and . . . the resulting will was not the result of the free exercise of judgment and choice.' " 1 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 15.2, at 716 (1960).

{9} Mrs. Gersbach had the burden of proof to establish a prima facie case of undue influence. *See* NMSA 1978, § 45–3–407 (1975). She had to do so by clear and convincing evidence. *Montoya v. Torres,* 113 N.M. at 109, 823 P.2d at 909. If she established facts sufficient to support a presumption of undue influence, however, Warren was required to rebut the presumption. *See In re Estate of Gonzales,* 108 N.M. 583, 584–85, 775 P.2d 1300, 1301–02 (Ct.App.1988).

{10} Warren argues that the record before the trial court does not support a presumption of undue influence. We review the evidence in the light most favorable to the prevailing party, recognizing that the standard requires sufficient evidence to permit "the fact finder to reach an abiding conviction as to the truth of the facts found." *Montoya v. Torres,* 113 N.M. at 109, 823 P.2d at 909. We conclude that a presumption of undue influence did not arise. Mrs. Gersbach failed to establish a prima facie case of undue influence; though a confidential relationship existed, there is no evidence that Warren exerted any power that relationship might have given him. The circumstances on which the Court of Appeals relied to affirm the trial court do not justify an inference of improperly-exerted influence.

## A.

{11} For purposes of undue influence, in New Mexico, "[a] confidential or fiduciary relationship exists when one person places trust and confidence in the integrity and fidelity of another." *In re Estate of Keeney,* 121 N.M. 58, 61, 908 P.2d 751, 754 (Ct.App. 1995). That definition, and particularly its application by the Court of Appeals in *In re*

*Will of Ferrill,* 97 N.M. 383, 640 P.2d 489 (Ct.App.1981), has been the subject of criticism. *See* McCulloch, Comment, 13 N.M.L.Rev. at 760 (characterizing the Court's analysis as "eliminating any meaningful inquiry as to the nature of the confidential relationship"). We note that in *Keeney,* as well as in this case, the Court of Appeals relied on *Ferrill* in identifying evidence sufficient to support a finding of a confidential relationship. *See Keeney,* 121 N.M. at 61–62, 908 P.2d at 754–55; *Gersbach v. Warren,* slip op. at 3–4. Whether or not the application of the definition of a confidential relationship was misapplied in *Ferrill,* we think Mrs. Gersbach produced sufficient evidence to support an inference of a confidential relationship in this case.

{12} The record indicates Mr. Gersbach and Warren were close friends. The two often spent time together alone and talked on the phone frequently, conversations to which Mrs. Gersbach was not a party. The record also indicates that Mr. Gersbach trusted Warren. Warren was permitted to pay a minimal rent on the farm, to do so as he was able, and to run the farm without a written lease. The trial court found that Mr. Gersbach "had disclosed to Respondent the location of substantial amounts of cash located in and around his home in San Miguel County," and that Mr. Gersbach "loaned money to Respondent without setting any particular terms for the repayment of those debts." [RP 163] These facts support the district court's finding that a confidential relationship existed.

**B.**

{13} The district court also found "suspicious circumstances." One such circumstance was "an element of secrecy" about the purpose of the will. We construe this finding as a finding that Mr. Gersbach misrepresented the contents of the 1985 will. However, the record does not support a finding of misrepresentation. Furthermore, even if a finding of misrepresentation were warranted, we do not believe that such a finding alone supports a presumption of undue influence in this case.

{14} We have held that the failure to disclose a gift or secrecy by a beneficiary is a suspicious circumstance. *Montoya v. Torres,* 113 N.M. at 110, 823 P.2d at 910; *see also Doughty v. Morris,* 117 N.M. 284, 289, 871 P.2d 380, 385 (Ct.App.1994). Under this principle, Mrs. Gersbach was required to show that Warren had knowledge of the devise and kept it a secret. There is no such evidence in this case.

{15} Mrs. Gersbach argues that her husband kept the devise to Warren secret. We have never held that a testator's secrecy constitutes a suspicious circumstance.

{16} Further, it does not appear from the record that Mr. Gersbach intended to deceive his wife. In 1985, Mrs. Gersbach went with her husband to the attorney who had prepared the 1979 wills, and both Mr. and Mrs. Gersbach changed their wills. Her 1985 will devised to Warren any interest that she had in the Waterflow farm and stated that the farm was her husband's separate property by inheritance. In discussing the wills' contents with Mrs. Gersbach later, Mr. Gersbach may have described the devise to Warren inaccurately. However, the evidence indicates that Mr. Gersbach had every intention of informing his wife of the devise to Warren. Had he not intended to do so, he would not have involved her as he did in the 1985 will changes. Because the Waterflow farm was his separate property, there was no apparent need for her will to mention the Waterflow farm. Their subsequent discussion appears to have stemmed from her own question or questions about the devise, indicating she knew what the wills said.

{17} We conclude that the evidence does not support a finding that anything other than an outright gift was intended or that Mr. Gersbach misrepresented his intent. We therefore hold that the evidence is insufficient to show the element of secrecy to which our cases have referred. Therefore, the trial court erred in identifying secrecy as a suspicious circumstance relevant to a presumption of undue influence in this case.

**C.**

{18} Mrs. Gersbach also points to the lack of consideration for the bequest as a

suspicious circumstance. In *Ferrill,* the Court of Appeals stated that "[s]ome of the circumstances which courts have found suspicious in cases where a will was contested on the grounds of undue influence are: ... 2) there is a lack of consideration for the bequest." *In re Will of Ferrill,* 97 N.M. at 387, 640 P.2d at 493.[1] The Nebraska Supreme Court also listed lack of consideration as a suspicious circumstance in *Estate of Novak,* 235 Neb. 939, 458 N.W.2d 221, 226 (1990). However, *Novak*'s listing ultimately relied on *Ferrill,* which Warren correctly notes relied on cases that did not involve wills. Warren argues that this Court has not held that a lack of consideration for a testamentary gift constitutes a suspicious circumstance.

{19} Nevertheless, this Court recently again listed a lack of consideration as a "suspicious circumstance." *Montoya v. Torres,* 113 N.M. at 110, 823 P.2d at 910. We also said that "[a]lone, the lack of consideration may not be a suspicious circumstance." *Id.* at 111, 823 P.2d at 911. In addition, we said that "the principles involved in the application of the presumption of undue influence are identical with regard to both wills and deeds." *Id.,* at 111 n. 1, 823 P.2d at 911 n. 1.

{20} In light of *Ferrill* and *Montoya,* it is not surprising that the trial court and the Court of Appeals relied on a lack of consideration as a suspicious circumstance in this case. Given the essential nature of a testamentary gift, however, we think we now must hold that lack of consideration for a testamentary gift ordinarily is not a suspicious circumstance. Ordinarily, a testator intends to confer a benefit.

{21} We agree with the Court of Appeals that "strict definitions are not necessarily useful analytical tools." *Gersbach v. Warren,* slip op. at 7. Yet some relationship among the various circumstances listed as suspicious must be identified. Otherwise, trial courts cannot be expected to know when it is appropriate to recognize the existence of a presumption. We believe that Warren correctly suggests the lack of consideration may

be relevant in analyzing the broader question of whether the disposition may be characterized as "unjust." For example, the existence of consideration may help rebut a presumption of undue influence. *Cf. In re Estate of Strozzi,* 120 N.M. 541, 545, 903 P.2d 852, 856 (Ct.App.1995) (discussing evidence sufficient to create a prima facie case of undue influence and remarking that "[a] $1 million ranch estate is an extraordinary amount of consideration for the work [the donees] performed over only the last few years of Strozzi's life, or so the jury could have concluded in light of the evidence"). Because a testator ordinarily intends to confer a benefit, however, a friendship of long standing may help prevent a presumption of undue influence from arising.

{22} Given these principles, we believe that the lack of consideration is not, independently, a suspicious circumstance in this case. Therefore, we next consider whether or not the trial court's finding of an "unnatural" disposition is supported by the record and, then, whether or not on this record a presumption of undue influence arose.

### D.

{23} The trial court included in its list of suspicious circumstances the following: "[t]he disposition to a non-family member was unnatural and contrary to the natural disposition which occurred in 1979." Warren argued to the Court of Appeals that the district court "may have confused the concept of the unnatural disposition with the concept of 'the natural object of the testator's bounty.' " *See generally Estate of Strozzi,* 120 N.M. at 546, 903 P.2d at 857 (discussing an instruction on "natural objects of [a testator's] bounty" in connection with the issue of testamentary capacity). The Court of Appeals rejected this argument, believing that the trial court had taken into account the "provisions and intent of the 1979 will with the testimony of both Respondent and Petitioner about the business and personal relationship between Respondent and Decedent."

---

1. The Court of Appeals cited four cases in support of this statement: *Ostertag v. Donovan,* 65 N.M. 6, 331 P.2d 355 (1958); *Brown v. Cobb,* 53 N.M. 169, 204 P.2d 264 (1949); *Salazar v. Man-* *derfield,* 47 N.M. 64, 134 P.2d 544 (1943); *Cardenas v. Ortiz,* 29 N.M. 633, 226 P. 418 (1924). Warren correctly points out that these cases involved inter vivos transfers of property.

*Gersbach v. Warren,* slip op. at 10. Based on *Ferrill,* the Court of Appeals concluded that the trial court was entitled to rely on the disposition of a prior will to determine whether the disposition of a subsequent will is "unnatural or unjust." *Id.* at 9 (citing *Ferrill,* 97 N.M. at 388, 640 P.2d at 494).

{24} As a statement of law, the trial court's characterization of the prior gift as "natural" and the later gift as "unnatural" is unremarkable. It has been suggested that an "unnatural" devise is one in which the testator leaves a portion of his or her estate to someone not the natural object of one's bounty, someone to whom the testator would not have been expected to devise his property. *See In re Nelson's Estate,* 72 Wyo. 444, 266 P.2d 238, 244–45 (1954). A "natural disposition" has been defined as one "which provides for a testator's heirs at law. As one court succinctly put it: '[T]he natural object of a will maker's bounty is one related to him/her by consanguinity.' " Roy D. Madoff, *Unmasking Undue Influence,* 81 Minn. L.Rev. 571, 590 (1997). We must conclude the gift to Warren is "unnatural" because he would not inherit under the laws of intestacy and that the prior gift to Mrs. Gersbach was "natural" because she would have been an intestate heir.

{25} "Courts sometimes look to a prior will, if one exists, as evidence of the naturalness of the disposition." Madoff, *Unmasking Undue Influence,* 81 Minn.L.Rev. at 591. However, evidence of what a prior will provided is of limited utility in evaluating the validity of provisions in a subsequent will.

[I]f a testator provided for his family in an earlier will and then provided for a person with whom he had a confidential relationship, then the former will frequently serves as evidence of the unnaturalness of the subsequent disposition. However, if instead the prior will provided for a disposition to someone other than a family member (i.e., a disposition which is perceived by the court as "unnatural"), then rather than being taken as evidence of the naturalness of the subsequent disposition, courts tend instead to view the prior will

as evidence of a testator's susceptibility to undue influence.

*Id.* at 592 (footnotes omitted).

{26} No one has suggested that Warren's option to purchase the Waterflow farm at seventy-five percent of appraised value was evidence of a susceptibility to undue influence. If the 1979 will was not the result of undue influence, the 1985 will might be viewed as expanding a prior gift and thus as not "unnatural" in the sense of "unanticipated," and thus "suspicious." Further, the subsequent will provides for both a family member and a non-family member and provides as a gift to the non-family member property he otherwise would have had an option to purchase at a favorable price had the family member retained the farm until her death. The later will reduced the expectancy interest of a spouse and enlarged that of a friend, treating them roughly as equals. We think this change is of limited utility in evaluating the validity of the later devise. *Cf. Ferrill,* 97 N.M. at 388, 640 P.2d at 494 (holding jury might have concluded that the later disposition was unnatural or unjust when decedent's prior will left most of her estate to her grandson).

{27} The trial court may have believed the change in wills was unfair and thus unjust. If so, the court's determination must be analyzed as a statement of fact. As a statement of fact, however, the trial court's determination requires additional evidence or findings of fact, or further inferences from the evidence or findings, to support a determination that the disposition was unjust.

{28} The trial court may have questioned why Mr. Gersbach left his "natural" heir only part of his estate. The trial court may have questioned why Mr. Gersbach changed his will. Unless the evidence presented by Mrs. Gersbach justified an inference that the gift was the result of improperly exerted influence, such questions do not require an answer; Mr. Gersbach's motive or reasons need not be identified and proved. *See generally* Margaret B. Alcock, Comment, *Estates and Trusts,* 13 N.M.L.Rev. 395, 401 (1983) (characterizing the result in *Ferrill* as making it "virtually impossible for a testator who is old and infirm to dispose of his property in a

manner that a judge or jury might interpret as unnatural or unjust."). Finally, then, we turn to the ultimate issue of whether Mrs. Gersbach produced sufficient evidence to give rise to a presumption of undue influence.

### E.

{29} To give rise to a presumption of undue influence, and the need for the beneficiary to rebut the presumption, the evidence must justify an inference of misconduct, which produced a desired or foreseeable result. That is what this Court meant in *Montoya* when we said that "the court must answer the question of whether the donor would have made the gift but for the undue influence exerted over him or her." *Montoya*, 113 N.M. at 110, 823 P.2d at 910. The trial court's findings establish a very generous testamentary gift to a close friend rather than to the testator's spouse or another relative. The gift is larger than that made in a prior will but the same property is at issue. There is no evidence that Warren abused the relationship or dominated Mr. Gersbach. There is no evidence Warren's confidential relationship, rather than his friendship, led to the gift. There is no evidence that Mr. Gersbach acted other than of his own volition. We have, finally, only the gift itself. That is not enough to support an inference of improperly exerted influence.

{30} The trial court may have believed that the gift of the Waterflow farm was so large that Warren must have exerted undue influence on Mr. Gersbach. The court listed first among "suspicious circumstances" the lack of consideration. That circumstance, in this case, does not justify a presumption of undue influence. *Montoya v. Torres*, 113 N.M. at 111, 823 P.2d at 911. Warren's longstanding friendship with Mr. Gersbach, Warren's lengthy occupation of the farm as lessee, and the 1979 will's provision of an option for him to purchase at a favorable price all are consistent with a donative transfer. We cannot recognize a presumption of undue influence on these facts without speculating about Mr. Gersbach's motive or reasons. We cannot speculate about motive or reasons on these facts without jeopardizing the principle of testamentary freedom. *See generally* NMSA 1978, § 45-1-102(B)(2)

(1975) ("The underlying purposes and policies of the Probate Code are: ... (2) to discover and make effective the intent of a decedent in distribution of his property"). Otherwise, any significant testamentary gift outside the class of intestate takers would be vulnerable to a contest on the basis of undue influence. *Cf.* § 45-1-102(B)(4) ("The underlying purposes and policies of the Probate Code are: ... (3) to promote a speedy and efficient system for the settlement of the estate of the decedent").

### III.

{31} In order to uphold the Court of Appeals' memorandum opinion and the trial court's judgment, we would need to conclude that, viewing the evidence in the light most favorable to Mrs. Gersbach, a reasonable fact finder could find clear and convincing evidence that the testator made a gift he would not have made absent improper influence. We hold that the evidence Mrs. Gersbach put forward did not satisfy her burden. We reverse the Court of Appeals and remand this cause to district court for entry of a judgment upholding Mr. Gersbach's disposition of the Waterflow farm to Warren. Warren shall recover his appellate costs.

{32} **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, SERNA and McKINNON, JJ., concur.