2006-NMCA-033

131 P.3d 81

Nora PERALTA, Plaintiff–Appellant,

v.

Manford R. and Lucy A. PERALTA, husband and wife, and Alex and Ruby V. Archuleta, husband and wife, Defendants–Appellees.

No. 24,970.

Court of Appeals of New Mexico.

Oct. 3, 2005.

Robert D. Montgomery, Albuquerque, NM, for Appellant.

Robert B. Martinez, Robert B. Martinez, P.A., Albuquerque, NM, for Appellees.

## OPINION

FRY, Judge.

{1} Nora Peralta filed suit against her brother Manford Peralta and her sister Ruby Archuleta seeking to recover assets of their mother, Helen Peralta, that had been diverted prior to Helen's death by Manford and Ruby (Defendants). The district court granted summary judgment to Manford and Ruby on the basis that Nora's action should have been brought in a probate proceeding on behalf of the estate. Nora appeals the order granting summary judgment. We re-

verse, concluding that Nora could file her suit as a civil action, and remand for trial.

**BACKGROUND**

{2} After the death of her husband in 1979, Helen executed a will leaving her estate to her three children or their survivors equally. At that same time, Nora was living with Helen and, together with Delores Valdez, providing care for Helen when it was needed. In December 1994, Manford removed Helen from her residence and moved her to live with him and/or Ruby. Shortly thereafter, in March 1995, Helen's bank accounts were changed to payable-on-death accounts for the benefit of Manford and Ruby. At the same time, Helen executed a codicil to her 1979 will that excluded Nora and divided her estate between Manford and Ruby. In January 1996, Helen transferred by quitclaim deed the sole remaining asset in her estate, a piece of property with a house and apartments, to Manford and Ruby and their respective spouses.

{3} During this time, Manford and Ruby maligned Nora to Helen, telling her that Nora had no use for her and would not take care of her. The transfer of the assets of the estate were concealed from Nora for several years. Helen died on August 2, 1999, at the age of 94. There was no probate of her estate.

{4} Five months after Helen died, Nora filed her complaint for rescission, restitution and recovery, and for imposition of a trust with regard to Helen's estate. Nora claimed that Manford and Ruby had used their control and influence to convince Helen to transfer her bank accounts and real property to them and to have Nora removed from Helen's will. She sought to have a trust imposed on the assets that Manford and Ruby had received from Helen. Nora amended her complaint more than two years later to include, as a basis for her claims, that her father and mother had made a contract to make a will disposing of their property equally among their three children. Nora has abandoned this contract claim on appeal.

{5} Manford and Ruby moved for summary judgment arguing that there were no issues of material fact relating to Nora's claims of undue influence and abuse of confi-

dential or familial relationship. They argued that Nora was unable to prove that they had exerted any influence over Helen. Nora responded, arguing that there was a presumption of undue influence under the evidence presented.

{6} The district court conducted a hearing on the motion and expressed concern that the estate had not been included in Nora's suit and that her claim had not been made in connection with probate. The district court granted the motion for summary judgment on grounds different from those argued by Defendants, ruling:

> There is no case. There is absolutely no case because if there was any undue influence, it was exerted on the senior Mrs. Peralta, who is dead; and the damage, if any, was done to her or her estate.... Without an estate, you don't have a case. It wasn't brought in the name of the estate or against it but, more importantly, in the name of the estate, which is something your client could have undertaken to do, is open up an estate and say, I'm suing on behalf of my mother; it has been dissipated by the following misconduct on the part of these putative heirs. Maybe you have a case there, but you don't now.

**DISCUSSION**

{7} We review the grant of summary judgment de novo because it presents a question of law. *Wilson v. Fritschy*, 2002-NMCA–105, ¶ 10, 132 N.M. 785, 55 P.3d 997. We must decide whether Nora was required to proceed on her claim in probate.

{8} In 1994, we recognized a cause of action against those who intentionally interfere with an expected inheritance. *Doughty v. Morris*, 117 N.M. 284, 287, 871 P.2d 380, 383 (Ct.App.1994). In that case, a will beneficiary alleged that her brother had tortiously interfered with her inheritance by coercing their ailing mother into making certain inter vivos transfers of property, which resulted in no property remaining in the estate to divide as the will specified. Relying on the Restatement (Second) of Torts, § 774B (1979), we recognized the tort of interference with a prospective inheritance. *Doughty*, 117 N.M.

at 287–88, 871 P.2d at 383–84. Thus, we allowed the cause of action where an inter vivos transfer of property depleted the estate and left nothing to be transferred in probate. The elements of the cause of action are: "(1) the existence of an expectancy; (2) a reasonable certainty that the expectancy would have been realized, but for the interference; (3) intentional interference with that expectancy; (4) tortious conduct involved with interference, such as fraud, duress, or undue influence; and (5) damages." *Id.* at 288, 871 P.2d at 384.

{9} In 2002, we were asked to decide whether the tort of intentional interference with expected inheritance would lie where probate proceedings were available to address the distribution of disputed assets and would otherwise provide an adequate remedy. *Wilson,* 2002–NMCA–105, ¶ 1. In *Wilson,* the plaintiffs were beneficiaries of a trust that would have allowed each of them to receive one-third of their uncle's estate. *Id.* ¶ 3. About five years later, the uncle drastically changed the testamentary plan on the urging of a third party so that the plaintiffs' share of the estate was distributed to a nursing home. *Id.* ¶¶ 3–4. When their uncle died, the plaintiffs indicated that they were challenging the revised testamentary plan. *Id.* ¶ 5. No formal probate proceeding was instituted. *Id.* However, the trustee filed an interpleader and informal probate proceeding, which eventually resulted in a settlement where plaintiffs each received 18.7875 percent of the estate. *Id.* ¶¶ 3–6. Sometime thereafter, the plaintiffs filed a lawsuit alleging that the defendants had tortiously interfered with their inheritance.

{10} We decided, following the majority of our sister states, "that a cause of action for tortious interference with an expected inheritance will not lie when probate proceedings are available to address the disposition of disputed assets and can otherwise provide adequate relief." *Id.* ¶ 35. We determined that "when property passes subject to a testamentary instrument, it is preferable to conclude the dispute at one setting, which ordinarily will afford injured parties an opportunity for substantial relief." *Id.* We stated that the preferred proceeding was in probate because the legislature had enacted the Probate Code to deal with such matters and we did not want to undermine the legislative intent in enacting the Probate Code. *Id.* ¶¶ 19, 21.

{11} We are now faced with a case falling between *Doughty* and *Wilson.* Defendants argue that the proper forum for resolution of the issues raised by Nora is pursuant to the Probate Code. It is true that any action attacking the testamentary capacity of the decedent should be brought pursuant to the Probate Code. *See Wilson,* 2002–NMCA–105, ¶ 18 (explaining that the right to contest a will "exists solely by virtue of the New Mexico Probate Code"). Defendants argue that Nora placed the validity of her parents' will and Helen's codicil into issue, thus putting this case squarely within the holding of *Wilson.* Nora counters that her case falls within the holding of *Doughty* because she is attacking the inter vivos transfers of all the property in Helen's estate before she died. Contrary to the arguments of the parties, we believe this case does not fall precisely within the holding of either *Doughty* or *Wilson* because there was both an inter vivos transfer of all the property in Helen's estate as well as a claim of improper influence in the revision of Helen's will to exclude Nora.

{12} Although a probate proceeding would be the proper place to attack the codicil, such an attack does not provide an adequate remedy here. If Nora were to prevail and have the codicil set aside, she is placed in the same situation as the *Doughty* plaintiff. There is no estate left to distribute under the will. It is this injustice that the tort of intentional interference with inheritance was meant to remedy. We conclude that in a situation where the estate has been depleted so that there could be no remedy in probate, proceeding in a civil action is appropriate.

{13} We believe that the district court erred in determining that this matter could only have been brought in the context of a probate proceeding. In *Wilson* and the cases it relied on, probate proceedings had been brought and matters relating to the validity of the testamentary plan were before the probate court. Thus, where matters re-

lating to the validity of the testamentary instrument are present, the courts have determined that the probate proceeding is the proper place to pursue such issues. *Id.* ¶ 19. As we noted in *Wilson*, "[t]he proper focus of the tort is on the just distribution of estate assets; when that can be achieved in probate, the need for the tort disappears." *Id.* ¶ 31. However, it is clear that where probate does not provide an adequate remedy, the tort action will be available. *Id.*

{14} This problem was recognized by the Illinois appellate court in *In re Estate of Jeziorski*, 162 Ill.App.3d 1057, 114 Ill.Dec. 267, 516 N.E.2d 422, 425 (1987), where there had been fraudulent inter vivos transfers and all of the assets were outside the estate. In that case, the court stated that even if the plaintiffs should prevail in a will contest proceeding, that would not provide them with the relief they were seeking. *Id.* at 426. The court allowed the tort action to proceed. Similarly, in *Martin v. Martin*, 687 So.2d 903, 907 (Fla.Dist.Ct.App.1997), where most of the assets were placed in a inter vivos trust prior to death, the remedy in probate was deemed inadequate because the trust assets were not part of the probate. The court permitted the tort action to proceed.

{15} Consistent with these authorities, we hold that the situation here is an exception to the requirement that a probate proceeding is the only forum for attacking the validity of a testamentary instrument, because we conclude that it will not provide adequate relief. Had Nora filed a probate proceeding as a means to attack the codicil, she would have achieved nothing because there was nothing in the estate for her to recover. Thus, she was placed in the situation of the *Doughty* plaintiff, where there was nothing to challenge in probate because there was no property left in the estate.

{16} While a probate proceeding would have been futile for Nora to pursue, in order to establish her claim for tortious interference with expected inheritance, she would nonetheless have to challenge the validity of Helen's codicil in order to establish the existence of an expectancy that she would inherit from Helen if Manford and Ruby had not interfered with that expectancy, which is an element of her tort cause of action. *Doughty*, 117 N.M. at 288, 871 P.2d at 384. Under our holding, on remand Nora may attack the codicil in an attempt to prove her tort claim.

{17} We recognize that there may be problems with the different burdens of proof required to contest a will and to establish tortious interference with inheritance when both are allowed to proceed in a single action before the district court. A claim that a will was procured through undue influence must be shown by clear and convincing evidence, *In re Will of Ferrill*, 97 N.M. 383, 392, 640 P.2d 489, 498 (Ct.App.1981), while a claim of tortious interference with inheritance need only be established by a preponderance of the evidence. *See United Nuclear Corp. v. Allendale Mut. Ins.*, 103 N.M. 480, 485, 709 P.2d 649, 654 (1985) (stating that "[i]t is the general rule ... that issues of fact in civil cases are to be determined according to the preponderance of the evidence"). We do not believe that the different burdens of proof necessitate different proceedings. Plaintiff will simply be required to meet the different burdens applicable to each aspect of her claim at trial.

{18} We see no reason not to allow the matter to proceed in the district court, particularly because the district court is a court of general jurisdiction and can determine probate matters brought before it. NMSA 1978, § 45–1–302.1 (1977). Thus, the district court can hear matters relating to the testamentary document and require Nora to prove undue influence by clear and convincing evidence. Then, if Nora succeeds in attacking the document and thereby proves the existence of an expectancy, the court can hear the remaining aspects of the claim of tortious interference with inheritance and determine the facts by a preponderance of the evidence.

{19} To the extent Defendants argue that the statute of limitations is implicated here, we disagree. Nora's complaint was filed within six months after Helen's death. Because the case was properly filed as a civil action, it was filed well within the statute of limitations. NMSA 1978, § 37–1–8 (1976) (setting a three year statute of limitations for personal injury).

{20} Citing to NMSA 1978, § 45–3–203 (1975), Defendants argue that Nora could only proceed in a probate proceeding because the Probate Code grants Nora standing to bring an action concerning the estate of her mother, Helen. That section simply sets forth the priority among persons seeking appointment as personal representatives. We agree that Nora could have moved to have herself appointed as the personal representative of Helen's estate and presented the 1979 will for probate. Again, however, this would have availed her nothing because there was no estate to probate. If the Probate Code does not provide an adequate remedy, then the suit in tort is the proper proceeding to pursue.

{21} To the extent Defendants argue that the district court properly granted summary judgment because there were no issues of material fact going to Nora's claim of undue influence, we do not agree. Nora presented evidence sufficient to warrant trial on the merits.

{22} "A presumption of undue influence arises when a confidential or fiduciary relationship exists and other suspicious circumstances are shown." *Doughty*, 117 N.M. at 288, 871 P.2d at 384. Nora pointed to suspicious circumstances, including old age and weakened condition, lack of consideration, unjust disposition of the property, participation of Manford and Ruby in procuring the inter vivos gifts, and secrecy, concealment, or failure to disclose the gifts. *See Gersbach v. Warren*, 1998–NMSC–013, ¶ 8, 125 N.M. 269, 960 P.2d 811 (setting out factors to be considered in determining undue influence). Defendants argue that Nora has not proved the confidential relationship or that Helen was susceptible to undue influence. However, Nora produced evidence suggesting that Helen was susceptible to undue influence, including evidence of Helen's advanced age and physical frailty as well as proof that Manford and Ruby were maligning Nora to Helen in an apparent effort to isolate Helen. Nora also produced evidence that Helen was living with Manford or Ruby and that they participated in the procurement of the inter vivos gifts shortly after Helen moved in with them. This evidence is comparable to the evidence upon which we held that the trial court could determine that a confidential relationship existed between a parent and her child in *Doughty*, 117 N.M. at 289, 871 P.2d at 385. Once the confidential relationship can be found, the presence of suspicious circumstances permits the presumption of undue influence, which Defendants may then attempt to rebut. But the fact remains that the foregoing evidence creates issues of fact that cannot be resolved on summary judgment.

## CONCLUSION

{23} For the foregoing reasons, we reverse and remand for a trial on the merits of Nora's complaint.

{24} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and LYNN PICKARD, Judges.